Filed 8/26/13; pub. order 9/13/13 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BROWN BARK III, L.P., | |
| Plaintiff and Respondent, | G047198 |
| v. | (Super. Ct. No. 30-2009-00122631) |
| JAIMIE HAVER, et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Derek W. Hunt, Judge. Affirmed in part, reversed in part, and remanded.

AlvaradoSmith, W. Michael Hensley, Kevin A. Day and Gregory G. Snarr for Defendants and Appellants.

Lanak & Hanna, Jennifer M. Schildbach and Mac W. Cabal for Plaintiff and Respondent.

\*          \*          \*

Plaintiff and respondent Brown Bark III, L.P. sued defendants and appellants Jaimie Haver and Westover Capital Corporation to recover funds Westover Financial, Inc. failed to repay on a revolving line of credit.[1] Although Westover Capital was not a party to the contracts that created the line of credit, Brown Bark sued Westover Capital for breach of those contracts on a successor liability theory. Brown Bark also sued Haver and Westover Capital for conversion and fraud, alleging they converted the Westover Financial assets pledged as security for the line of credit and made misrepresentations to prevent and delay Brown Bark's efforts to recover the outstanding balance from Westover Financial. Following a bifurcated jury and court trial, Haver and Westover Capital obtained a favorable judgment on all of Brown Bark's causes of action. They subsequently sought their attorney fees under the fee provisions in the line of credit contracts, but the trial court denied their fee motion. Haver and Westover Capital now appeal.

We conclude the trial court erred in failing to award Westover Capital its attorney fees on the breach of contract causes of action. Civil Code section 1717 makes an otherwise unilateral attorney fee provision reciprocal and entitles a noncontracting party to recover contractual attorney fees when it defeats a contract-based cause of action that would have made the noncontracting party liable for contractual attorney fees had it lost.[2] Brown Bark would have recovered its attorney fees if it had prevailed on its successor liability theory against Westover Capital because the line of credit contracts made its fee provisions binding on the contracting parties' successors. Section 1717 therefore allows Westover Capital to recover its attorney fees because it defeated claims

---

[1] We will refer to Brown Bark III, L.P. as Brown Bark, Jaimie Haver as Haver, Westover Capital Corporation as Westover Capital, and Westover Financial, Inc. as Westover Financial. Westover Financial is not a party to this appeal.

[2] All statutory references shall be to the Civil Code unless otherwise stated.

2

for breach of the line of credit contracts that would have exposed Westover Capital to attorney fee liability had it lost.  Section 1717 only applies to contract causes of action, however.  We therefore affirm the trial court's order denying Westover Capital attorney fees on the tort causes of action.

We also affirm the trial court's order denying Haver's fee motion.  She was not a party to the line of credit contracts and Brown Bark did not sue her for breaching those contracts.  Because Haver never faced attorney fee liability under the line of credit contracts, she may not invoke section 1717 to recover her fees.

We remand the matter to the trial court to determine (1) whether and how to allocate Westover Capital's attorney fees between the breach of contract and successor liability issues and the tort issues; (2) whether and how to allocate the fees for the attorneys who jointly represented Westover Capital and Haver; and (3) the amount of attorney fees Westover Capital may recover for this appeal.

I

FACTS AND PROCEDURAL HISTORY

Westover Financial was a leasing and equipment finance company Joseph G. Woodley founded in the mid-1980's.  Woodley, his wife, and Steven R. Jones were the only shareholders.  Westover Financial later hired Haver as an employee and she eventually became corporate secretary, but she never held any shares or voting rights and lacked authority to bind the corporation.

In 2007, Westover Financial opened a $1 million revolving line of credit with First Heritage Bank, N.A. (First Heritage).  To open the line of credit Westover Financial entered into several contracts with First Heritage, including the "Credit Agreement," the "Revolving Line of Credit Promissory Note" (Promissory Note), the "Security and Pledge Agreement" (Security Agreement), and the "Custodian Agreement" (collectively, "Line of Credit Contracts").  Woodley and Jones also personally guaranteed

3

Westover Financial's performance. The Line of Credit Contracts each contained unilateral attorney fees provisions entitling the "Lender" or "Secured Party" to recover from the "Borrower" or "Debtor" all attorney fees incurred in any dispute relating to the interpretation, enforcement, or performance of any of the Line of Credit Contracts.

Westover Financial failed to repay more than $850,000 it borrowed from First Heritage under the line of credit. In January 2009, the Federal Deposit Insurance Corporation, as receiver for First Heritage, sold and assigned all interests in Westover Financial's line of credit to Brown Bark.

In May 2009, Brown Bark filed this action against Westover Financial, Woodley, and Jones, seeking the outstanding balance on the line of credit plus interest, penalties, costs, and attorney fees. Brown Bark quickly obtained an ex parte right to attach order against Westover Financial. Around the time Brown Bark filed this action, Westover Financial began the process of dissolving as a corporation. It completed the process and filed its certificate of dissolution in November 2009.

Westover Financial's decision to dissolve left Haver unemployed. She subsequently formed Westover Capital in June 2009 to capitalize on the leasing and equipment finance expertise she acquired while working for Westover Financial. Haver filed the articles of incorporation and all other documents necessary to incorporate Westover Capital just 10 days after Brown Bark obtained its right to attach order against Westover Financial. Haver is Westover Capital's sole shareholder, officer, and director.

Brown Bark amended its complaint to add Haver and Westover Capital as defendants when it learned Haver continued to operate a business in the leasing and equipment finance industry. Brown Bark took Westover Financial's default when it failed to respond to any of Brown Bark's complaints and dismissed Woodley and Jones after they each filed for bankruptcy protection. The operative third amended complaint alleged the following causes of action against the remaining defendants: (1) breach of the Credit Agreement, Promissory Note, and Security Agreement against Westover Financial

4

and Westover Capital; (2) breach of the Custodian Agreement against Westover Financial and Westover Capital; (3) conversion against Westover Capital and Haver; (4) fraud against Westover Capital and Haver; and (5) suppression of material facts against Westover Capital and Haver.

Brown Bark alleged Westover Capital was liable for Westover Financial's breach of the Line of Credit Contracts because Westover Capital was either Westover Financial's alter ego or a successor in interest formed to fraudulently avoid Westover Financial's debts and liabilities. According to Brown Bark, Haver was an officer and director of both Westover Financial and Westover Capital, she transferred Westover Financial's assets to Westover Capital without any consideration, and she used those assets to conduct the same business under the Westover Capital name. The conversion cause of action alleged Haver and Westover Capital converted all of Westover Financial's assets it pledged as collateral for the line of credit. Finally, the two fraud claims alleged Haver and Westover Capital misrepresented and concealed facts from Brown Bark to prevent or delay its efforts to collect on Westover Financial's line of credit.[3]

On the first day of trial, Brown Bark dismissed its alter ego allegations and proceeded against Westover Capital on the breach of contract claims based solely on a successor liability theory. Westover Capital asked the trial court to bifurcate the trial and hear the successor liability issues first. Brown Bark opposed that motion because it intended to offer the same evidence to prove the successor liability theory and the conversion and fraud claims. The trial court decided to bifurcate the trial, but not as Westover Capital had requested. Instead, the court bifurcated the trial into a liability phase and a damages phase. The court explained the successor liability theory and the

---

[3] The third amended complaint also alleged causes of action for claim and delivery and injunctive relief and included Westover Financial on the conversion, fraud, and suppression of material fact claims, but Brown Bark later dismissed those claims.

5

conversion and fraud claims would both be tried during the liability phase, with the jury deciding the conversion and fraud claims and the court deciding the successor liability theory. The court also explained it would treat the liability phase as a default prove-up for the breach of contract claims against Westover Financial.

At the close of trial, the court instructed the jury on the conversion and fraud claims only. Although the record fails to explain why, the parties agreed not to submit the breach of contract claims to the jury. The court therefore did not instruct the jury on breach of contract and the jury did not return a verdict on the breach of contract claims. The court's instructions told the jury "not to be concerned about" Brown Bark's claim that Westover Capital was Westover Financial's successor in interest, but rather to simply assume that claim was true. The jury returned a verdict in Haver and Westover Capital's favor, finding they neither converted Brown Bark's property nor "defrauded [Brown Bark] by the creation of Westover Capital."

The trial court did not make any express findings or rulings regarding the successor liability theory, but entered judgment for Haver and Westover Capital on all causes of action. Specifically, the court's judgment stated (1) Brown Bark "sought adjudication of its First and Second Causes of Action for Breach of Contract against Westover Capital Corporation on a theory of successor liability"; (2) Brown Bark "shall recover nothing from Defendants Jaimie Haver and Westover Capital Corporation on the following causes of action: [¶] First and Second Causes of Action for Breach of Contract; [¶] Sixth Cause of Action for Conversion; and [¶] Eighth and Ninth Causes of Action for Fraud"; and (3) Brown Bark "shall take nothing from Defendants Jaimie Haver and Westover Capital Corporation on any cause of action in the Third Amended Complaint." The judgment awarded Brown Bark a default judgment against Westover Financial on the breach of contract claims in the principal amount of more than $750,000.

After entry of judgment, Haver and Westover Capital jointly sought more than $170,000 in attorney fees and costs based on the attorney fee provisions in the

6

Line of Credit Contracts. The trial court denied the motion, finding Haver and Westover Capital were not entitled to the benefit of the Line of Credit Contracts' attorney fee provisions because Brown Bark did not sue Haver on those contracts and Haver and Westover Capital only prevailed on the two tort causes of action, not a contract cause of action.

Haver and Westover Capital timely appealed the trial court's decision denying their fee motion. Neither side appealed from the trial court's judgment.

II

DISCUSSION

A.     *Governing Legal Principles on Contractual Attorney Fee Awards*

A party may not recover attorney fees unless expressly authorized by statute or contract. (Code Civ. Proc., § 1021; *Sessions Payroll Management, Inc. v. Noble Construction Co.* (2000) 84 Cal.App.4th 671, 677 (*Sessions*).) In the absence of a statute authorizing the recovery of attorney fees, the parties may agree on whether and how to allocate attorney fees. (*Xuereb v. Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341 (*Xuereb*).) They may agree the prevailing party will be awarded all the attorney fees incurred in any litigation between them, limit the recovery of fees only to claims arising from certain transactions or events, or award them only on certain types of claims. The parties may agree to award attorney fees on claims sounding in both contract and tort. (*Id*. at pp. 1341-1342.)

To ensure mutuality of remedy, however, section 1717 makes an attorney fee provision reciprocal even if it would otherwise be unilateral either by its terms or in its effect. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610 (*Santisas*); *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128 (*Reynolds*).) Specifically, section 1717 states, "In any action on a contract, where the contract specifically provides that attorney[] fees and costs, which are incurred to enforce that contract, shall be awarded either to one of

7

the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney[] fees in addition to other costs." (§ 1717, subd. (a).)

Section 1717 makes an otherwise unilateral attorney fee provision reciprocal in at least two situations relevant to this appeal. The first "is 'when the contract provides the right to one party but not to the other.' [Citation.] In this situation, the effect of section 1717 is to allow recovery of attorney fees by whichever contracting party prevails, 'whether he or she is the party specified in the contract or not' [citation]." (*Santisas*, *supra*, 17 Cal.4th at pp. 610-611.)

"The second situation in which section 1717 makes an otherwise unilateral right reciprocal . . . is when a person sued on a contract containing a provision for attorney fees to the prevailing party defends the litigation 'by successfully arguing the inapplicability, invalidity, unenforceability, or nonexistence of the same contract.' [Citation.] Because these arguments are inconsistent with a contractual claim for attorney fees under the same agreement, a party prevailing on any of these bases usually cannot claim attorney fees as a contractual right. If section 1717 did not apply in this situation, the right to attorney fees would be effectively unilateral . . . because only the party seeking to affirm and enforce the agreement could invoke its attorney fee provision." (*Santisas*, *supra*, 17 Cal.4th at p. 611.) Accordingly, section 1717 allows a party who defeats a contract claim by showing the contract did not apply or was unenforceable to nonetheless recover attorney fees under that contract if the opposing party would have been entitled to attorney fees had it prevailed. (*Ibid*.)

This second situation arises not only when a signatory to a contract defeats another signatory's claims, but also when a *non*signatory defeats a signatory's efforts to enforce the contract. As our Supreme Court explained in the seminal *Reynolds* case: "Its purposes require section 1717 be interpreted to further provide a reciprocal remedy for a

8

nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney[] fees should he prevail in enforcing the contractual obligation against the defendant." (*Reynolds*, *supra*, 25 Cal.3d at p. 128; see also *Real Property Services Corp. v. City of Pasadena* (1994) 25 Cal.App.4th 375, 382 (*Real Property Services*) ["in cases involving nonsignatories to a contract with an attorney fee provision, the following rule may be distilled from the applicable cases:  A party is entitled to recover its attorney fees pursuant to a contractual provision only when the party would have been liable for the fees of the opposing party if the opposing party had prevailed"].)

In *Reynolds*, the signatory plaintiff sued two nonsignatories to recover on a promissory note, alleging they were liable as the alter egos of the corporation that signed the note. (*Reynolds*, *supra*, 25 Cal.3d at p. 127.)  The nonsignatories prevailed by showing they were not the corporation's alter egos and therefore the plaintiff could not enforce the note against them.  The Supreme Court allowed the nonsignatories to recover their attorney fees under a fee provision in the note because the plaintiff would have been entitled to recover its fees under that provision if the plaintiff had succeeded in enforcing the note against the nonsignatories. (*Id*. at p. 129; see also *Pueblo Radiology Medical Group, Inc. v. Gerlach* (2008) 163 Cal.App.4th 826, 828-829 (*Pueblo*).)

Section 1717 and its reciprocity principles, however, have "limited application.  [They] cover[] *only* contract actions, where the theory of the case is breach of contract, and where the contract sued upon itself specifically provides for an award of attorney fees incurred to enforce *that* contract.  [Section 1717's] only effect is to make an otherwise unilateral right to attorney fees reciprocally binding upon all parties to actions to enforce the contract." (*Xuereb*, *supra*, 3 Cal.App.4th at p. 1342, original italics.)

Tort and other noncontract claims are not subject to section 1717 and its reciprocity principles. (*Santisas*, *supra*, 17 Cal.4th at p. 615; *Gil v. Mansano* (2004) 121 Cal.App.4th 739, 742-743 (*Gil*).)  The parties to a contract are free to agree that one

9

or more of them shall recover their attorney fees if they prevail on a tort or other noncontract claim, but the right to recover those fees depends solely on the contractual language. (*Gil*, at p. 743; *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708 (*Exxess*).) Section 1717 does not make a unilateral fee provision reciprocal on tort or other noncontract claims. (*Moallem v. Coldwell Banker Com. Group, Inc.* (1994) 25 Cal.App.4th 1827, 1831-1832 (*Moallem*).)

Accordingly, to invoke section 1717 and its reciprocity principles a party must show (1) he or she was sued on a contract containing an attorney fee provision; (2) he or she prevailed on the contract claims; and (3) the opponent would have been entitled to recover attorney fees had the opponent prevailed. (*Santisas*, *supra*, 17 Cal.4th at pp. 610-611; *Reynolds*, *supra*, 25 Cal.3d at pp. 128-129; *Exxess*, *supra*, 64 Cal.App.4th at p. 706.) The court must disregard any tort claims included in the action when determining whether section 1717 applies. (*Santisas*, at p. 615; *Exxess*, at p. 708.)

"On appeal this court reviews a determination of the legal basis for an award of attorney fees de novo as a question of law." (*Sessions*, *supra*, 84 Cal.App.4th at p. 677; see also *Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 450 (*Dell Merk*).)

B.     *Section 1717 Entitles Westover Capital to Recover Its Attorney Fees on the Breach of Contract Claims*

Westover Capital sought to recover its attorney fees based on the attorney fee provisions in the Line of Credit Contracts between First Heritage and Westover Financial. Each of these Contracts included a unilateral attorney fee provision entitling the "Lender" or "Secured Party" to recover its attorney fees and costs from the "Borrower" or "Debtor." For example, the Credit Agreement provided, "in the event that any dispute arises (whether or not such dispute is with Borrower) relating to the interpretation, enforcement or performance of this Agreement or any of the other Loan Documents, Lender shall be entitled to collect from Borrower on demand all reasonable

fees and expenses incurred in connection therewith, including but not limited to fees of attorneys . . . ."

As a nonsignatory seeking to recover its attorney fees for successfully defeating Brown Bark's efforts to hold it liable for Westover Financial's breach of the Line of Credit Contracts, Westover Capital must show (1) Brown Bark sued Westover Capital on the Line of Credit Contracts; (2) Westover Capital prevailed on Brown Bark's breach of contract claims; and (3) Brown Bark would have been entitled to its attorney fees had it prevailed on the breach of contract claims.

### 1.      Brown Bark Sued Westover Capital on the Line of Credit Contracts

"California courts construe the term 'on a contract' liberally.  '"As long as the action 'involve[s]' a contract it is '"on [the] contact"' within the meaning of section 1717.  [Citations.]"  [Citations.]'  [Citation.]"  (*Turner v. Schultz* (2009) 175 Cal.App.4th 974, 979-980; *Dell Merk*, *supra*, 132 Cal.App.4th at p. 455.)  To determine whether an action is on the contract, we look to the complaint and focus on the basis of the cause of action.  (*Mepco Services, Inc. v. Saddleback Valley Unified School Dist.* (2010) 189 Cal.App.4th 1027, 1047 (*Mepco*); *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347; *Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178-1179.)  Any action that is based on a contract is an action on that contract regardless of the relief sought.  (See *Kachlon*, at pp. 347-348 [lawsuit to quiet title and for declaratory and injunctive relief is an action on a contract because the action was based on a promissory note and deed of trust].)

The third amended complaint named Westover Capital as a defendant on both the first and second causes of action for breach of contract.  These claims alleged both Westover Financial and Westover Capital breached the Line of Credit Contracts, and sought to recover damages caused by Westover Financial's failure to repay the funds borrowed under those contracts.  Brown Bark alleged Westover Capital was liable for

11

those damages on a successor liability theory because Westover Capital was a mere continuation of Westover Financial that Haver fraudulently formed so Westover Financial could escape it debts and liabilities. Brown Bark pursued its successor liability theory against Westover Capital throughout this action. For example, it amended its complaint several times seeking to adequately allege the breach of contract claims based on successor liability, it opposed Westover Capital's summary adjudication motion challenging the breach of contract claims, it argued the successor liability theory in its trial brief, and it presented evidence at trial seeking to prove Westover Capital was merely a continuation of Westover Financial. Accordingly, Brown Bark sued Westover Capital on the Line of Credit Contracts.

Brown Bark nonetheless argues it did not sue Westover Capital on the Line of Credit Contracts or any other contract, but rather it sued Westover Capital on a successor liability claim only. To support this contention, Brown Bark relies on an unpublished federal district court case, *Sunnyside Development Co., LLC v. Opsys, Ltd.* (N.D.Cal., Aug. 29, 2007, C 05 0553 MHP) 2007 WL 2462141 (*Sunnyside*), which concluded attorney fees could not be recovered on a successor liability claim because "successor liability is an equitable doctrine [citation] and is therefore not a contract claim. [Citation]." (*Id.* at p. *4.) We disagree with Brown Bark's characterization of its claims against Westover Capital and decline to follow *Sunnyside* for three reasons.[4]

First, successor liability is not a separate claim independent of Brown Bark's breach of contract claims. To the contrary, successor liability is an equitable doctrine that applies when a purchasing corporation is merely a continuation of the selling corporation or the asset sale was fraudulently entered to escape debts and

---

[4] We also note *Sunnyside* is an unpublished federal district court case that we are not required to follow. (*Gomes v. Countrywide Homes Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 & fn. 6.)

liabilities.[5]  (*Franklin*, *supra*, 87 Cal.App.4th at p. 621; *Rosales v. Thermex-Thermatron, Inc.* (1998) 67 Cal.App.4th 187, 195-196.)  Successor liability requires an underlying cause of action and merely extends the liability on that cause of action to a corporation that would not otherwise be liable.  (Cf. *Design Associates, Inc. v. Welch* (1964) 224 Cal.App.2d 165, 171 [as an equitable doctrine extending a corporation's liabilities to the individuals who control it, the alter ego doctrine requires an underlying cause of action]; *McMartin v. Children's Institute International* (1989) 212 Cal.App.3d 1393, 1406 [civil conspiracy requires an underlying tort because it merely extends liability for the tort to individuals who shared in the tortfeasor's plan or design, but did not actually commit the tort].)

Second, successor liability's nature as an equitable doctrine does not prevent it from forming the basis for a contractual claim under section 1717.  For example, alter ego is an equitable doctrine that also extends a corporation's liability on a cause of action to another corporation or individual when the doctrine's requirements are met.[6]  (*Webber v. Inland Empire Investments, Inc.* (1999) 74 Cal.App.4th 884, 900-901.)

---

[5]      Although not relevant to this action, the purchasing corporation also may be held liable for the selling corporation's debts and liabilities when (1) it expressly or impliedly agrees to assume those debts and liabilities; (2) the asset sale amounts to a consolidation or merger of the two corporations; or (3) a consumer is injured by one of the selling corporation's products that the purchasing corporation continues to manufacture and sell.  (*Franklin v. USX Corp.* (2001) 87 Cal.App.4th 615, 621 (*Franklin*); see also *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28, 30, 34 (*Ray*).)  These situations are all exceptions to the general rule that one corporation is *not* liable for the debts and liabilities of another corporation simply because it purchased the corporation's assets.  (*Ibid.*)

[6]      "In California, two conditions must be met before the alter ego doctrine will be invoked.  First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone."  (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.)

13

It is well settled a breach of contract claim based on an alter ego theory is still a claim on the contract and a nonsignatory who successfully defends against the claim may recover its attorney fees under section 1717. (*Reynolds*, *supra*, 25 Cal.3d at pp. 128-129; *Pueblo*, *supra*, 163 Cal.App.4th at pp. 828-830 ["The claim of 'alter ego' was a step directly implicated in the contract action"].) In the same manner, a breach of contract claim based on a successor liability theory is still a claim on the contract under section 1717.

Brown Bark contends *Reynolds* and its progeny do not apply to breach of contract claims based on a successor liability theory because alter ego and successor liability are distinct concepts. This argument misses the mark. Although the showing required to invoke these two equitable doctrines is different, their effect is the same. Under both doctrines, the legal distinction between two corporations (or a corporation and an individual) is disregarded and they are treated as one entity, at least when the basis for the successor liability is that one corporation is a mere continuation of another corporation.

Here, Brown Bark based it successor liability theory on its claim Westover Capital was a mere continuation of Westover Financial and therefore they should be treated as the same entity. In applying section 1717 and *Reynolds*, it is irrelevant whether the plaintiff sought to disregard a corporation's separate legal existence because the individuals running the corporation failed to respect its separate existence (alter ego doctrine) or transferred all of the corporation's assets to another corporation to escape liability (successor liability doctrine). The critical point is that the corporation and its shareholders or another corporation are treated as one for determining the underlying liability.

Third, *Sunnyside* does not address a defendant's right to recover attorney fees for defeating a breach of contract claim brought on a successor liability theory. *Sunnyside* involved a plaintiff who prevailed on a breach of lease and other claims against one defendant, but lost on its claims against a second defendant. The district

14

court granted the plaintiff's attorney fee motion, but limited the fees to those incurred on the successful breach of lease claim. The court denied fees on tort claims that were not covered by the attorney fee provision and on the plaintiff's unsuccessful successor liability claim against the second defendant. (*Sunnyside*, *supra*, 2007 WL 2462141, *4.) Because the party seeking attorney fees in *Sunnyside* was the plaintiff who lost on the successor liability theory, *Sunnyside* did not consider whether *Reynolds* and its progeny required an attorney fee award to a defendant who defeats a breach of contract claim brought on a successor liability theory. Sunnyside therefore does not support Brown Bark's position. (*Nevarrez v. San Marino Skilled Nursing & Wellness Centre, LLC* (2013) 216 Cal.App.4th 1349, 1363 ["A case is not authority for a proposition the court did not consider"].)

2.     Westover Capital Prevailed on Brown Bark's Breach of Contract Claims

Section 1717 defines "the prevailing party on the contract" as "the party who recovered a greater relief in the action on the contract." (§ 1717, subd. (b)(1).) The prevailing party determination is made by "'compar[ing] the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources.' [Citation.]" (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 (*Scott*).)

Here, the trial court did not make an express ruling on the successor liability theory, but the court's judgment declared Brown Bark "sought adjudication of its First and Second Causes of Action for Breach of Contract against Westover Capital Corporation on a theory of successor liability" and determined Brown Bark "shall take nothing from . . . Westover Capital Corporation on *any* cause of action in the Third Amended Complaint." (Italics added.) Westover Capital therefore prevailed on the contract claims because it recovered the greater relief. (§ 1717, subd. (b)(1).)

15

Specifically, Brown Bark sought to recover more than $850,000 in principal, interest, attorney fees, and costs from Westover Capital on the breach of contract claims, but it recovered nothing and the trial court entered judgment in Westover Capital's favor. When a defendant completely defeats all breach of contract claims alleged against it, the defendant is the prevailing party under section 1717 as a matter of law. (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 866, 876 (*Hsu*).)

The trial court nonetheless denied Westover Capital's fee motion because it found Westover Capital prevailed only on the two tort claims for conversion and fraud. The court acknowledged Brown Bark sued Westover Capital on the Line of Credit Contracts, but it concluded Westover Capital did not prevail on those contract claims because the parties agreed not to submit the breach of contract causes of action to the jury. The trial court erred in reaching this conclusion.

Whether the parties submitted the breach of contract claims to the jury is irrelevant to the question of who prevailed on those claims. (See *Mepco*, *supra*, 189 Cal.App.4th at p. 1047.) Indeed, it does not matter how or why a party prevailed on the contract; it only matters that the party prevailed. (*Real Property Services*, *supra*, 25 Cal.App.4th at p. 384, fn. 7.) Section 1717 required the trial court to determine the prevailing party by comparing the relief sought and the relief obtained on the Line of Credit Contracts. (§ 1717, subd. (b)(1); *Scott*, *supra*, 20 Cal.4th at p. 1109.) That comparison shows Westover Capital prevailed on Brown Bark's two breach of contract claims because Brown Bark obtained nothing from Westover Capital on those claims.

Brown Bark contends it prevailed on the breach of contract claims because it obtained a default judgment against Westover Financial for the full amount due under the Line of Credit Contracts. This argument fails because it ignores that Westover Capital and Westover Financial are independent entities and the trial court's judgment did not hold Westover Capital responsible for any of Westover Financial's liabilities. When a plaintiff sues more than one independent party on the same contract, the trial court must

16

separately determine who prevailed on the plaintiff's claim against each independent defendant. (Cf. *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 491 ["When an action involves multiple, independent contracts, each of which provides for attorney fees, the prevailing party for purposes of . . . section 1717 must be determined as to each contract regardless of who prevails in the overall action"]; 7 Witkin, Cal. Procedure (5th ed. 2008) Judgment, § 94, p. 633 ["One defendant who prevails may recover costs even though the plaintiff recovers against another defendant"].) Brown Bark's default judgment against Westover Financial on the breach of contract claims in no way changes the outcome on the breach of contract claims between Brown Bark and Westover Capital. Westover Capital remains the prevailing party because it obtained a judgment against Brown Bark on those claims.

Brown Bark also argues Westover Capital failed to show the trial court abused the broad discretion it had under section 1717 to determine the prevailing party. Brown Bark overstates the extent of the trial court's discretion. If neither party achieves a complete victory, a trial court has discretion to determine which party, if any, prevailed. (*Scott*, *supra*, 20 Cal.4th at p. 1109.) A trial court, however, *lacks* discretion to determine whether there was a prevailing party when one party obtains "a simple, unqualified victory by completely prevailing on or defeating all contract claims." (*Ibid*.) In that situation, the party obtaining the unqualified victory is entitled to attorney fees under section 1717 as a matter of law. (*Hsu*, *supra*, 9 Cal.4th at pp. 866, 876.) Here, Westover Capital obtained an unqualified victory and therefore the trial court had no discretion to determine Westover Capital did not prevail.

3.    Brown Bark Would Have Been Entitled to Its Attorney Fees Had It Prevailed on the Breach of Contract Claims

If Brown Bark had succeeded in showing Westover Capital was merely a continuation of Westover Financial that Haver formed to fraudulently avoid Westover Financial's debts and liabilities, then the successor liability doctrine would allow Brown

17

Bark to recover from Westover Capital for Westover Financial's breach of the Line of Credit Contracts. (*Franklin*, *supra*, 87 Cal.App.4th at p. 621; *Ray*, *supra*, 19 Cal.3d at p. 28.) Moreover, Brown Bark would have been entitled to recover its attorney fees under the Line of Credit Contracts' attorney fee provisions because those agreements included the following provision making all their terms binding on the contracting parties' successors: "This Agreement . . . shall be *binding upon* and inure to the benefit of Borrower and Lender and their respective *successors* and assigns . . . ." (Italics added.) Accordingly, because Westover Capital would have been subject to the burden of the Line of Credit Contracts' attorney fee provisions if Brown Bark had prevailed, section 1717's reciprocity principles entitle Westover Capital to the benefit of those attorney fee provisions and authorize it to recover the fees it reasonably incurred in prevailing on Brown Bark's breach of contract claims. (*Reynolds*, *supra*, 25 Cal.3d at pp. 128-129; *Pueblo*, *supra*, 163 Cal.App.4th at pp. 828-829.)

The trial court, however, denied Westover Capital's fee motion because it found Westover Capital would not have been liable for Brown Bark's attorney fees had Brown Bark prevailed. According to the trial court, Brown Bark's successor liability claim "was nothing more than a theory" on which Brown Bark could never prevail because "it was quite clear" Westover Capital was not a continuation of Westover Financial. The trial court erred in reaching this conclusion.

Whether Brown Bark's successor liability theory lacked merit is irrelevant to whether Westover Capital could recover its attorney fees under section 1717. (*Dell Merk*, *supra*, 132 Cal.App.4th at p. 455.) Regardless of the theory's merit, Brown Bark sued Westover Capital on that theory and forced Westover Capital to incur attorney fees to defend against it through trial. "[T]he pertinent inquiry for purposes of . . . section 1717 is whether [Brown Bark] would have been entitled to attorney fees in a hypothetical situation in which [it] did prevail on its claim[s]." (*Mepco*, *supra*, 189 Cal.App.4th at p. 1047.) Had Brown Bark succeeded in proving Westover Capital

18

was Westover Financial's successor, the Line of Credit Contracts would have allowed Brown Bark to recover its attorney fees from Westover Capital. Accordingly, Westover Capital is entitled to recover its attorney fees on the breach of contract claims under the Line of Credit Contracts' attorney fee provisions.

C.    *Westover Capital May Not Recover Attorney Fees on the Conversion and Fraud Causes of Action*

In addition to the two breach of contract claims, Brown Bark also sued Westover Capital on tort claims for conversion and fraud. The jury rejected these claims and returned a verdict for Westover Capital. The trial court concluded Westover Capital had no right to recover attorney fees on these tort claims because the Line of Credit Contracts' attorney fee provisions did not identify Westover Capital as a party entitled to the benefit of those provisions. We agree.

"[S]ection 1717 does not apply to tort claims; it determines which party, if any, is entitled to attorney[] fees on a *contract claim only*. [Citations.] As to tort claims, the question of whether to award attorney[] fees turns on the language of the contractual attorney[] fee provision, i.e., whether the party seeking fees has 'prevailed' within the meaning of the provision and whether the type of claim is within the scope of the provision. [Citation.] This distinction between contract and tort claims flows from the fact that a tort claim is not 'on a contract' and is therefore outside the ambit of section 1717. [Citations.]" (*Exxess*, *supra*, 64 Cal.App.4th at p. 708, original italics; see also *Santisas*, *supra*, 17 Cal.4th at p. 615; *Gil*, *supra*, 121 Cal.App.4th at pp. 742-743; *Xuereb*, *supra*, 3 Cal.App.4th at p. 1342.)

Section 1717's reciprocity principles therefore make a unilateral attorney fee provision reciprocal only on contract claims; they do not make a unilateral provision reciprocal on tort claims. (*Gil*, *supra*, 121 Cal.App.4th at pp. 742-743; *Exxess*, *supra*, 64 Cal.App.4th at p. 708; *Xuereb*, *supra*, 3 Cal.App.4th at p. 1342.) A party may recover attorney fees on a tort claim only if an attorney fee provision broad enough to cover tort

19

claims expressly identifies that party as a party entitled to its benefits. (*Moallem*, *supra*, 25 Cal.App.4th at pp. 1830-1832.)

In *Moallem*, the plaintiff successfully sued its real estate broker for negligence and breach of fiduciary duty and then sought attorney fees under a fee provision in the brokerage agreement. (*Moallem*, *supra*, 25 Cal.App.4th at pp. 1828-1829.) Although the fee provision's language was otherwise broad enough to cover the plaintiff's tort claims, the *Moallem* court affirmed the trial court's decision denying the plaintiff's fee motion because the fee provision's language limited the right to recover attorney fees to the broker only; it did not authorize the plaintiff to recover attorney fees on any type of claim. Because the claims at issue were not on the contract, the plaintiff could not rely on section 1717's reciprocity principles to make the unilateral fee provision reciprocal. (*Moallem*, at pp. 1831-1832.)

As explained above, the attorney fee provisions in each of the Line of Credit Agreements authorized the "Lender" or "Secured Party" to recover its attorney fees from the "Borrower" or "Debtor." The provisions did not authorize the Borrower or Debtor to recover its attorney fees under any circumstance. Westover Capital may rely on section 1717 and its reciprocity principles to recover its attorney fees on the contract claims, but those principles do not apply to Brown Bark's tort claims. (*Gil*, *supra*, 121 Cal.App.4th at pp. 742-743; *Exxess*, *supra*, 64 Cal.App.4th at p. 708; *Xuereb*, *supra*, 3 Cal.App.4th at p. 1342.)

Westover Capital argues it is entitled to recover its attorney fees on the tort claims because the fee provisions in the Line of Credit Contracts are broad enough to cover tort claims. But the type of claims the fee provisions cover is only half of the analysis. The fee provisions also must identify Westover Capital as a party entitled to the benefit of those provisions. (*Moallem*, *supra*, 25 Cal.App.4th at pp. 1830-1832.) The fee provisions, however, are unilateral provisions that only authorize the Lender or Secured Party to recover attorney fees. Even the "sharp quillets of the law" will not permit

20

Westover Capital to invoke section 1717 and make the unilateral fee provisions reciprocal as to the tort claims. (Henry VI, part 1, act 2, scene 4, line 19.) The trial court therefore properly denied Westover Capital's motion to recover the attorney fees it incurred on the tort claims.

D. *Haver Is Not Entitled to Recover Any of Her Attorney Fees Under the Line of Credit Contracts*

Brown Bark did not name Haver as a defendant on either of the breach of contract causes of action, but rather sued her only on the conversion and fraud claims. The trial court denied the fee motion as to Haver because she was not sued on a contract and therefore had no right to recover attorney fees under any of the Line of Credit Contracts. We agree.

As explained above, section 1717 only applies when a party is sued on a contract. Because Brown Bark did not sue Haver on the Line of Credit Contracts, she may not invoke section 1717 to seek the benefit of the attorney fee provisions in those Contracts. The trial court therefore properly denied the fee motion as to Haver.

E. T*he Trial Court Must Determine Whether and How to Allocate Attorney Fees Between the Contract and Tort Claims and Between Westover Capital and Haver*

"Where a cause of action based on the contract providing for attorney[] fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney[] fees under section 1717 only as they relate to the contract action." (*Reynolds*, *supra*, 25 Cal.3d at p. 129; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1603-1604 (*Amtower*).) The prevailing party therefore must generally allocate the attorney fees it incurred between the causes of action on the contract and the noncontract causes of action. (*Ibid*.)

Attorney fees, however, "need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed. All expenses incurred with respect to [issues common

21

to all causes of action] qualify for award." (*Reynolds*, *supra*, 25 Cal.3d at pp. 129-130; *Amtower*, *supra*, 158 Cal.App.4th at pp. 1603-1604.) The governing standard is whether the "issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 (*Akins*); see also *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 (*Abdallah*) [allocation not required when the claims are ""'inextricably intertwined'" [citation], making it 'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units'"].)

Allocation also is generally required when the same lawyer represents one party who is entitled to recover its attorney fees and another party who is not. As with allocation among causes of action, allocation among jointly represented parties "is not required when the liability of the parties is 'so factually interrelated that it would have been impossible to separate the activities into compensable and noncompensable time units. . . . [Citation.]' [Citation.]" (*Cruz v. Ayromloo* (2007) 155 Cal.App.4th 1270, 1277; *Zintel Holdings, LLC v. McLean* (2012) 209 Cal.App.4th 431, 443.)

Here, the trial court did not address allocation because it found neither Westover Capital nor Haver was entitled to recover attorney fees on any cause of action. "The trial court[, however,] is the best judge of the value of professional services rendered in its court" (*Akins*, *supra*, 79 Cal.App.4th at p. 1134) and allocation of attorney fees "is a matter within the trial court's discretion" (*Amtower*, *supra*, 158 Cal.App.4th at p. 1604; *Abdallah*, *supra*, 43 Cal.App.4th at p. 1111). Accordingly, on remand the trial court must determine (1) whether and how to allocate Westover Capital's attorney fees between the breach of contract and successor liability issues and the tort issues; (2) whether and how to allocate the fees for the attorneys who jointly represented Westover Capital and Haver; and (3) the amount of attorney fees Westover Capital may recover for this appeal (*Akins*, at p. 1134).

22

### III

#### DISPOSITION

We affirm the trial court's order denying Haver her attorney fees and denying Westover Capital attorney fees on the conversion and fraud causes of action. We reverse the trial court's order denying Westover Capital attorney fees on the breach of contract claims and remand for further proceedings to determine the amount of fees Westover Capital may recover consistent with the views expressed in this opinion. Westover Capital and Haver shall recover their costs on appeal.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.

23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BROWN BARK III, L.P., | |
|     Plaintiff and Respondent, | G047198 |
|       v. | (Super. Ct. No. 30-2009-00122631) |
| JAIMIE HAVER, et al., | ORDER GRANTING REQUESTS FOR PUBLICATION |
|     Defendants and Appellants. | |

Appellants Jamie Haver and Westover Capital Corporation and nonparty Gerald G. Knapton, Esq., request that our opinion filed August 26, 2013, be certified for publication. The requests are GRANTED. Our opinion meets the standards for publication set forth in California Rules of Court, rule 8.1105. The opinion is ordered published in the Official Reports.

ARONSON, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.

24