Filed 2/22/21  Real Properties Network v. D'Alessio CA4/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| REAL PROPERTIES NETWORK et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>DENNIS D'ALESSIO et al.,<br><br>    Defendants and Appellants. | G058351<br><br>(Super. Ct. No. 30-2016-00861609)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Knypstra Hermes, Bradley P. Knypstra and Grant Hermes for Defendants and Appellants.

The Ring Law Firm and Bart I. Ring for Plaintiffs and Respondents.

The parties to this appeal are defendants Dennis D'Alessio (D'Alessio) and his companies Newport Harbor Ventures, LLC (Ventures) and D'Alessio Investments, LLC (Investments), and plaintiffs Michael Mitchell (Mitchell) and his company Real Properties Network, LLC (Network). Defendants appeal from the trial court's rulings on defendants' and plaintiffs' dueling motions for attorney fees and to tax costs. Defendants raise four principal arguments: (1) Investments should have been deemed a prevailing party and recovered its fees; (2) the court improperly reduced defendants' fee recovery, even though D'Alessio the individual achieved a complete victory and Mitchell the individual suffered a complete defeat; (3) the court erred in taxing defendants' cost memorandum; and (4) plaintiffs inadequately supported their motion for attorney fees. We reject these arguments and affirm.

## FACTS

D'Alessio agreed to sell and Mitchell agreed to purchase a condominium in Newport Beach (the Property). The purchase and sale agreement (Agreement) required a two-year $160,000 note (the Note) with monthly interest only payments and a balloon payment at the end, all to be paid by Network to Investments.

Pursuant to the Agreement, Ventures recorded a grant deed transferring the Property to Network. But Ventures also recorded a quitclaim deed transferring the Property to Investments roughly weeks earlier. Mitchell discovered the title problem about three weeks before the balloon payment on the Note was due.

Mitchell promptly filed suit, seeking initially to quiet title to the Property, and subsequently amended his complaint to add causes of action for fraud, slander of title, and related claims against D'Alessio and his companies. The existence of the title problem apparently caused Mitchell to stop making interest payment on the Note and to refuse to make the balloon payment as scheduled.

The title and payment disputes were partly remedied years before trial—the former by a corrective grant deed a few months after plaintiffs' lawsuit was filed, and the

2

latter a few months thereafter (after defendants had filed their own lawsuit for repayment on the Note, which was consolidated with plaintiffs' original case).[1]  But the lawsuit went on, as each side argued it was entitled to additional remedies.

Plaintiffs sought to quiet title dating back to the original agreed upon purchase date, as opposed to the corrective grant deed date, and sought damages, including punitive damages, for the title problem.  Defendants sought late fees for various payments on the Note.  Both sides sought attorney fees under the Agreement and the Note.

Ten days before trial, defendants served plaintiffs with an offer to compromise under Code of Civil Procedure section 998.  Defendants offered to have judgment taken against them in favor of Network in the amount of $5,000, and to have each party bear its own attorneys' fees and costs.  Plaintiffs did not accept this offer, and the matter proceeded to trial.

At trial, the court reached a legally complex, mixed result, with simple practical consequences.  The court found in favor of Network against Investments and Ventures on Network's quiet title cause of action, and against Ventures only on Network's breach of warranty cause of action.  On plaintiffs' declaratory relief cause of action, the trial court declined to exercise its power, given the result on the quiet title cause of action.  Mitchell the individual did not prevail on any of his causes of action.  And the court found in favor of defendants on plaintiffs' remaining claims in the quiet title action.  In the Note action, the court rejected Investments' sole claim for late fees on the Note, finding inadequate evidence of monthly statements or other notices of late fees.

The practical result of these rulings was:  Network was deemed the owner of the Property, dating back to the original purchase date under the Agreement, and no party recovered money from any other.  Both sides declared victory and sought attorney

---

[1]  We refer to the two actions as the "quiet title action" (by plaintiffs against defendants) and the "note action" (by Investments against Network).

3

fees and costs.[2] Both sides also sought to strike and tax the other side's cost memorandum.

The trial court heard the attorney fee and cost motions and again reached a mixed result. Network was awarded $34,740 in attorney fees, while D'Alessio and Ventures were awarded $35,577 in attorney fees. Investments and Mitchell were denied attorney fees.

The trial court reasoned Network had defeated Investments' claim in the note action and was thus entitled to attorney fees it incurred for the note action. But the court denied Network its fees in the quiet title action because it did not prevail against the only signatory to the Agreement, D'Alessio the individual. The court found some of the time spent by plaintiffs' attorney was excessive, and slightly reduced Network's fees to arrive at the $34,740 figure.

The trial court denied Investments' claim for attorney fees, because the attorney fee provision in the Note was not broad enough to reach the claims in the quiet title action. The court found D'Alessio individually prevailed on all claims in the quiet title action, and as a signatory to the Agreement, he was therefore entitled to an award of his attorney fees on all issues. But the court found Ventures, as a non-signatory to the Agreement, was only entitled to its fees under Civil Code section 1717 on the contract claims in the quiet title action, not the tort claims. Investments, meanwhile, had not been sued for breach of contract, and was therefore denied fees on the quiet title action as well.

Plaintiffs argued defendants' attorney fees improperly included time spent on the note action and a cross-complaint against other parties (not at issue in this appeal), and the fees were excessive and included clerical work. The court agreed and reduced the fee amount to $35,577. The court also determined Network achieved greater relief

---

[2] Network also sought attorney fees in a separate motion brought under Code of Civil Procedure section 2033.420 for defendants' failure to admit certain requests for admission. The court denied the motion and plaintiffs did not appeal that ruling.

than the $5,000 offered by defendants by obtaining judgment on its quiet title cause of action.

The trial court granted both sides' motions to strike the other side's cost memorandum or memoranda. The court found both sides' failure to apportion costs between parties[3] and actions fatal to their cost claims.

Defendants timely appealed.

## DISCUSSION

Defendants raise four principal arguments: (1) Investments should have been deemed a prevailing party and recovered its attorney fees; (2) the trial court improperly reduced defendants' fee recovery, even though D'Alessio the individual achieved a complete victory and Mitchell suffered a complete defeat; (3) the trial court erred in striking defendants' cost memorandum; and (4) plaintiffs inadequately supported their motion for attorney fees. We reject these arguments in turn below.

*1. Investments as Prevailing Party*

The parties' claims for attorney fees arise from the contracts between them—the Agreement and the Note. Because the claims on the Agreement and the Note were originally raised in separate actions, we analyze them separately, as the trial court did. On appeal: "A trial court's determination that a litigant is a prevailing party under section 1717 is generally reviewed for abuse of discretion, but if the challenge to that determination is solely one of law, the de novo standard of review applies." (*Burkhalter Kessler Clement & George LLP v. Hamilton* (2018) 19 Cal.App.5th 38, 43.)

Defendants first contend Investments prevailed in the note action by inducing payment from plaintiffs. But the court determined Investments did not achieve an "unqualified victory" in the note action, because it failed to recover the late fees it

---

[3] As to defendants, between D'Alessio, Ventures, and Investments, and as to plaintiffs, between Mitchell and Network.

5

claimed (which were the only damages in dispute at the time of trial). We review this prevailing party determination for abuse of discretion.

In determining the prevailing party, the trial court was required "to compare the relief awarded on the contract claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.)

Defendants' trial brief indicated the only amounts still owed to Investments on the Note were "late fees and attorney's fees." Again, Investments failed to recover those late fees, which were then (and which had been through most of the pendency of the litigation) the only remaining point of dispute in the note action. By the time of trial, it was reasonable to for the trial court to infer the late fees were Investments' principal litigation goal in the note action. Thus, the court did not abuse its discretion in determining Network, and not Investments, prevailed in the note action.

Defendants also contend Investments prevailed in the quiet title action because plaintiffs only achieved the title to the Property which they already had by virtue of defendants' corrective grant deed, and because no other relief was awarded against Investments.[4] We disagree. "An element of a cause of action for quiet title is '[t]he adverse claims to the title of the plaintiff against which a determination is sought.'" (*West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 802.)

And defendants did not appeal from the final judgment in the quiet title action, in which the trial court found against Investments on the quiet title cause of

---

[4] There is an internal contradiction in defendants' positions with respect to Investments in the two actions. On the one hand, defendants contend Investments prevailed in the note action by inducing plaintiffs to remedy their breach before trial (by paying Investments). On the other hand, defendants contend Investments prevailed in the quiet title action because Investments remedied its breach before trial (by recording a corrective grant deed). Both cannot be true. In fact, as we explain, neither is true.

action. Consequently, defendants are bound by the trial court's finding that Investments had an adverse claim to title to the Property.

Plus, the result of the quiet title cause of action is the only result we can consider on this point. As the trial court correctly pointed out, Investments was a nonsignatory to the Agreement. So, its only claim to attorney fees on the Agreement arises from Civil Code section 1717, but that section does not apply to tort causes of action. (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 820.) And the only contract action asserted against Investments was the quiet title cause of action. So, Investments was not the prevailing party in the quiet title action. No abuse of discretion appears.

2. *The Reduction of Defendants' Fees*

Defendants also challenge the trial court's reduction of defendants' claimed attorney fees. They argue they are entitled to all their fees because D'Alessio prevailed on all causes of action asserted against him, and Mitchell was defeated on all causes of action he asserted. We review the amount of attorney fees awarded for abuse of discretion. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) "'"We presume the trial court's attorney fees award is correct and '[w]hen the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated.'"'" (*Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 36.)

The trial court ruled D'Alessio was "fully successful on the entire" quiet title action and was therefore "entitled to an award of attorney's fees for his defense of the claims" in the quiet title action. The trial court also ruled in favor defendant Ventures, but noted "[a]ttorney's fees awarded to D'Alessio would necessarily include any fees that [Ventures] could also claim against Mitchell on the breach of contract claim." Consequently, the trial court entered a single attorney fee award in favor of both D'Alessio and Ventures.

7

Turning to the amount, defendants sought to recover all fees they incurred in both the quiet title action and the note action, totaling $127,577. But the court excluded $55,000 in fees for work performed on a cross-complaint against unrelated parties and $12,000 in fees for work performed on the note action. The court also reduced defendants' fee award by a further $25,000 because of excessive billing, including billed time spent performing clerical tasks.

Defendants do not challenge the trial court's calculation of these amounts. Instead, defendants argue D'Alessio's complete victory and Mitchell's complete defeat require the court to award all claimed fees, and summarily contend their claimed fees were "reasonable." Civil Code section 1717 only permits recovery of "reasonable" attorney fees by a prevailing party in an action on a contract containing an attorney fee provision. Fees incurred against other, unrelated parties, or on another action are not "reasonable." Nor are excessive fees, or fees representing attorney time spent performing clerical tasks. Thus, the court did not abuse its discretion in reducing the fee award.

*3. Defendants' Claim for Costs*

The trial court declined to award costs to either side, granting both sides' motions to strike the other side's cost memoranda. As to defendants' costs (the only costs at issue on appeal), the court found defendants had failed to establish their costs were recoverable by failing to allocate between portions of the case upon which they were successful and portions of the case upon which they were defeated.

Defendants contend the court erred by granting plaintiffs' motion to strike defendants' cost memorandum. Defendants' argument on this point consists of a single paragraph, in which defendants again claim they were the prevailing parties throughout the litigation.

As explained above, defendants were not the prevailing parties on all issues in this litigation. Therefore, we reject defendants' sole contention of error as to costs.

8

*4. Evidentiary Support for Plaintiffs' Attorney Fee Motion*

Last, defendants challenge the attorney fee award in favor of plaintiff Network on the ground that Network failed to adequately support its motion for attorney fees. Specifically, defendants argue Network failed to apportion its fees between the two actions and between the two plaintiffs, and plaintiffs' counsel block billed. We are not persuaded.

Network's fee motion included a declaration by plaintiffs' counsel separately setting forth the tasks he performed in each of the two actions and apportioning time between the two actions where necessary (e.g., with respect to trial time). The declaration includes some block billing and does not include dated time entries. Plaintiffs' counsel set forth his hourly rate at $450 per hour and identified 90.8 hours spent in the note action ($40,860) and 75.25 hours spent in the quiet title action ($33,862.50). Network's motion requested both amounts.

Once more the trial court found Network was the prevailing party only in the note action, and also found plaintiffs' counsel's billing sufficient to evaluate the fee request. The court found some of the time spent excessive and awarded $34,740 in fees.

Defendants' first attack on the fee award (that plaintiffs failed to apportion their fees between the two actions) is plainly erroneous. Plaintiffs' counsel's fee declaration expressly sets forth separate calculations for the two actions. Defendants' second argument (that plaintiffs failed to apportion their fees between the two plaintiffs) is similarly erroneous. The trial court only awarded fees to Network on the note action, to which Mitchell was not a party. Therefore, all fees incurred in the note action were incurred by Network.

As for defendants' contention regarding plaintiffs' counsel's block billing, "[t]rial courts retain discretion to penalize block billing when the practice prevents them from discerning which tasks are compensable and which are not." (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010.)

9

Here, the trial court expressly found plaintiffs' counsel's fee declaration sufficient to evaluate the reasonableness and compensability of his fees. Nothing in the record or in defendants' briefing suggests this determination was an abuse of discretion; plaintiffs' counsel's declaration explains the tasks performed and time spent with enough detail to evaluate them. Block billing, while perhaps not ideal, is "not objectionable per se." (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1325.)

## DISPOSITION

The order is affirmed. Plaintiffs shall recover costs on appeal.


THOMPSON, J.

WE CONCUR:


ARONSON, ACTING P. J.


GOETHALS, J.


10