Filed 11/8/22  Los Angeles Federal Credit Union v. Ahmad CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| LOS ANGELES FEDERAL CREDIT UNION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> TANVIR M. AHMAD et al., <br><br> Defendants and Appellants. | B320843 <br><br> Los Angeles County Superior Ct. No. 18TRCV00201 |

APPEAL from an order of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

Yates Litigation and John R. Yates for Defendants and Appellants.

Anaya Law Group, Alana B. Anaya and Joseph P. Graziano for Plaintiff and Respondent.

————————————————

Brothers Tanvir and Wasim Ahmad (the Ahmads) obtained a judgment in their favor in the underlying action. Los Angeles Federal Credit Union (LAFCU) had sued them to recover funds transferred to them by their now deceased father Chaudhry Muhammad. The Ahmads sought attorney fees as the prevailing parties pursuant to loan and credit card agreements between Muhammad and LAFCU. The trial court denied their motion, and the Ahmads now appeal, contending the trial court erred. We see no error and affirm the trial court's order.

## BACKGROUND

After suffering a serious illness in his old age, Muhammad transferred about $229,000 in cash to the Ahmads and placed three pieces of real property in an irrevocable trust. Then Muhammad and his new wife incurred approximately $32,000 in debt with LAFCU. In 2018, Muhammad stopped making payments on that debt to LAFCU. LACFU obtained a default judgment against Muhammad, who later died with no assets. In the action underlying this appeal, LAFCU then sought to collect the judgment from the Ahmads, on the theory that Muhammad's transfers to them were fraudulent within the meaning of the Uniform Fraudulent Transfers Act, specifically Civil Code section 3439.04.[1] Following a bench trial, the trial court found LAFCU had failed to prove Muhammad had an actual intent to hinder, delay or defraud LAFCU and entered judgment in favor of the Ahmads. The Ahmads then sought attorney fees pursuant to section 1717. The trial court denied their motion, finding that the Ahmads had not shown any contractual or statutory

---

[1] Further undesignated statutory references are to the Civil Code.

2

authority allowing them to recover attorney fees from LACFU as the prevailing parties. The court also found that claims under the Uniform Fraudulent Transfer Act are considered tort, not contract, claims.

## DISCUSSION

Section 1717 allows contract signatories to recover attorney fees in an action on the contract where they are the prevailing parties and the contract includes an attorney fees provision. If a contract only permits only one signatory to recover attorney fees, our Supreme Court has held that principles of mutuality permit any signatory to recover fees as the prevailing party. (*Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124,128–129.)

The Ahmads go further, contending that section 1717 applies not only to signatories but also to non-signatories who are sued in an enforcement action to collect a judgment obtained against a contract signatory. As support, the Ahmads rely on *MSY Trading, Inc. v. Saleen Automotive, Inc.* (2020) 51 Cal.App.5th 395 (*MSY Trading*); *347 Group, Inc. v. Philip Hawkins Architect, Inc.* (2020) 58 Cal.App.5th 209 (*Hawkins*); *Babcock v. Omansky* (1973) 31 Cal.App.3d 625, 633–634 (*Babcock*); and *Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809 (*Brown Bark*). We do not find these cases relevant as they involve non-signatories who step into the shoes of the contract signatory by virtue of their status as alter egos, agents or successors in interest.

As the court explained in *MSY Trading*, "The reason an alter ego can be added to a judgment is because, in the eyes of the law, the alter ego *was* a party, albeit by a different name. (See *Misik v. D'Arco, supra*, 197 Cal.App.4th 1065, 1075, 130 Cal.Rptr.3d 123 ["Amendment of a judgment to add an alter ego

3

is a proper procedure where it can be shown that the alter ego of the corporate entity had control of the litigation and was virtually represented in the lawsuit"].)"  The court found "it is as though the alleged alter ego *was* a party to the original lawsuit, and prevailed.  Consequently, a postjudgment, independent action to establish alter ego liability for a judgment on a contract is itself an action on the contract."  (*MSY Trading*, *supra*, 51 Cal.App.5th at p. 403.)

Similarly, *Hawkins* also involved a defendant unsuccessfully sued as an alleged alter ego of the contracting party.  The *Hawkins* court held: "Accordingly, because [plaintiff's] alter ego action was on the contract and Architect, Inc., the party Hawkins was alleged to be the alter ego of, was liable for attorney fees under the contract, Hawkins is entitled to attorney fees."  (*Hawkins*, *supra*, 58 Cal.App.5th at p. 215.)  We see nothing in these discussions that treat fraudulent conveyance (or conspiracy) theories as the equivalent of alter ego theories.  In these cases the courts of appeal awarded attorney fees based solely on the principle that alleged alter egos always stand in the shoes of the contract signatories.

Here the Ahmads were not alleged to be alter egos of Muhammad, even assuming such a doctrine could be applied to an individual person such as Muhammad.  Instead, the Ahmads are subject to the general merger rule, recognized in both cases, that " ' "when a judgment is rendered in a case involving a contract that includes an attorney fees and costs provision, the 'judgment extinguishes all further contractual rights, including the contractual attorney fees clause.' " ' "  (*MSY Trading, supra*, 51 Cal.App.5th at p. 403; *Hawkins, supra*, 58 Cal.App.5th at p. 215.)  Under this general rule, LAFCU's enforcement action on

4

its theory of fraudulent transfer of assets cannot be deemed an action on the contract.

Alternatively, the Ahmads more generally contend that *Babcock* and *Brown Bark* show that theories of successor liability in a follow-on action to enforce a judgment are not limited to an alter ego theory, and are "on the contract," rendering the merger doctrine inapplicable. We read these cases differently.

*Babcock* does not involve a follow-on collection action or a theory of successor liability. The plaintiff sued both the signatory on the promissory note and the non-signatories in the same action and sought to hold the non-signatories liable on the promissory note. The plaintiff sought recovery against the signatory debtor's non-signatory wife on the theory that she was "a co-adventurer and partner" with her husband and the other defendants, and that each defendant "was also the agent and employee of the others" and so " 'by reason of said agency and . . . joint venture and partnership of the defendants . . . , defendants, and each of them, became indebted on said promissory note and are now indebted to plaintiffs.' " (*Babcock, supra*, 31 Cal.App.3d at p. 633.) As the court explained: "It seems clear, by virtue of the above, that plaintiffs were thus seeking recovery on the notes; having won an order of nonsuit as to this tenth cause of action, [defendant wife] Bertha was the 'prevailing party' and entitled to attorney's fees under section 1717." (*Ibid.*)

LAFCU did not claim the Ahmads had any principal-agent, employer-employee, joint venture or partnership relationship with Muhammad, nor did LAFCU claim the Ahmads were indebted to it on its loan and credit agreements with Muhammad. There is simply no similarity between this case and *Babcock*.

5

*Brown Bark* does involve successor liability, but not a follow-on collection action. The plaintiff there sued the successor of the signatory defendant directly for breach of line of credit agreements. Those agreements not only included an attorney fees provision, but also bound the signatory parties' successors to the attorney fee provision. As the court explained: "[Plaintiff] Brown Bark would have recovered its attorney fees if it had prevailed on its successor liability theory against Westover Capital because the line of credit contracts made their fee provisions binding on the contracting parties' successors. Section 1717 therefore allows Westover Capital to recover its attorney fees because it defeated claims for breach of the line of credit contracts that would have exposed Westover Capital to attorney fee liability had it lost." (*Brown Bark, supra,* 219 Cal.App.4th at p. 815.)

Notably, plaintiff Brown Bark had also unsuccessfully sued an individual, Jaime Haver, in an attempt to recover its funds. The court of appeal affirmed the trial court's order denying the individual's motion for attorney fees because "[s]he was not a party to the line of credit contracts and Brown Bark did not sue her for breaching those contracts. Because [she] never faced attorney fee liability under the line of credit contracts, she may not invoke section 1717 to recover her fees." (*Brown Bark, supra,* 219 Cal.App.4th at p. 815.)

The Ahmads are in a position similar to Haver's in *Brown Bark*. LAFCU did not sue the Ahmads for breach of its loan and credit card agreements with Muhammad and did not contend the Ahmads were directly indebted to LACFU on those agreements. Because they never faced liability under Muhammed's contracts

with LACFU, they may not invoke section 1717 to recover their fees.

We find the trial court properly denied attorney fees because appellants faced no liability on the underlying contracts. Consequently, we need not and do not consider whether the trial court also properly denied attorney fees on the alternate ground that a section 3439.04 claim is a tort action.

## DISPOSITION

The trial court's order is affirmed. Parties to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.