Filed 9/14/23  Straiton v. Binder CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| DAVID STRAITON,  Plaintiff and Appellant,  v.  MITCHELL BINDER, et al.,  Defendants and Respondents. | B319912  (Los Angeles County Super. Ct. No. BC720375) |

APPEAL from a judgment of the Los Angeles County Superior Court, Daniel S. Murphy, Judge.  Affirmed in part and reversed in part.

Keiter Appellate Law and Mitchell Keiter for Plaintiff and Appellant.

Beitchman & Zekian, P.C., David P. Beitchman, and Andre Boniadi for Defendants and Respondents.

# INTRODUCTION

In 2002, when e-commerce was still in its infancy, David Straiton entered into an oral contract with Mitchell Binder, a jewelry designer. The alleged agreement called for Straiton to provide financial and technical assistance to help Binder start an internet jewelry business and for Binder to give Straiton a percentage of the revenues generated each year. Straiton claimed that he did his part by providing seed money and technical assistance to launch the website, but that Binder did not do his—he never shared with Straiton any of the profits he earned selling jewelry.

Sixteen years later Straiton filed this action for, among other things, breach of the oral agreement. In the intervening years, however, Binder had stopped selling jewelry individually and formed King Baby Studio, Inc. (KBSI), a corporation that sold jewelry on the internet and that, according to Binder, was not a party to the alleged oral contract between Straiton and Binder.

After the court sustained a demurrer by Binder and KBSI to one of Straiton's causes of action, the defendants moved for summary adjudication on the remaining causes of action and for summary judgment. The trial court granted the motion for summary judgment and entered judgment in favor of Binder and KBSI. We affirm the judgment in favor of KBSI, affirm the order granting the motion for summary adjudication on one of Straiton's causes of action, reverse the order granting the motion for summary adjudication on the others, and reverse the judgment in favor of Binder.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.     *Straiton and Binder Enter into an Oral Contract; Straiton Performs, but Binder Does Not*

In 2002 Binder was looking for financing to set up an online jewelry business. Binder and Straiton entered into an oral contract (which Binder assumed for purposes of his motion for summary judgment) with the following principal terms: Straiton would invest $25,000 to $30,000 in the internet jewelry business, provide technical support to create the website, and receive "12% of the revenues from all sources" each year that "revenues were generated"; Binder would report to Straiton annually "the amount of gross revenues." Although starting up the new business "was extremely risky in nature," the parties anticipated the business "could generate substantial profits and spin-off related enterprises." Straiton provided the services he agreed to provide, and Binder launched "King Baby," an internet company that, in subsequent years, also operated retail stores in several cities. Binder, however, did not pay Straiton any money or provide any accountings. Instead, Binder, doing business as King Baby, "transferred" the jewelry business to KBSI, a corporation wholly owned by Binder.

B.     *Straiton (Eventually) Files This Action*

Straiton filed this action on August 31, 2018, alleging five causes of action against Binder, "an individual, d/b/a King Baby" (Binder), KBSI, and "Does 1 through 100": (1) breach of oral contract, (2) fraud, (3) common count for money had and received, (4) accounting, and (5) voidable transfer. In his breach of contract cause of action, Straiton alleged that he performed "in

3

accordance with the terms and conditions" of the oral contract, that Binder and KBSI breached the contract "by failing to report and to account to" him, and that he suffered damages. In his fraud cause of action Straiton alleged Binder made the promises in the oral contract "with the intent to induce [Straiton] to invest monies and provide services to the startup business but not to ever pay or report to [him]." In his common count Straiton alleged Binder and KBSI became indebted to Straiton for money had and received by Binder and KBSI, that Straiton demanded payment, and that neither defendant paid him anything. In his cause of action for an accounting Straiton alleged Binder and KBSI have "undertaken numerous sales transactions," "received money, a portion of which is due to [Straiton]," but "have failed and refused" "to render the accounting and pay [Straiton]." In his cause of action for voidable transfer Straiton alleged King Baby transferred "its Jewelry business" to KBSI "wholly and surreptitiously," with the intent to deprive Straiton "of property or legal rights." Regarding all causes of action, Straiton alleged that Binder created KBSI "as an attempt to enable . . . Binder to escape liability" and that there "existed a unity of interest and ownership" between Binder and KBSI such that KBSI was the "alter ego" of Binder. The trial court subsequently ruled on demurrer the statute of limitations barred Straiton's cause of action for fraud, a ruling Straiton does not challenge.

     C.    *The Trial Court Grants a Motion by Binder and KBSI for Summary Judgment*

Binder and KBSI moved for summary judgment or, in the alternative, for summary adjudication on each of Straiton's four remaining causes of action (breach of oral contract, money had

4

and received, accounting, and voidable transfer). Binder stated in his supporting declaration that neither he "personally" nor any "fictitious business" of his had "marketed, offered for sale, or sold any jewelry" since August 31, 2014 and that therefore neither he nor any fictitious business of his ever "earned, received, made, or otherwise generated any such revenues, income, or profit during this period of time." Binder also stated that KBSI "has never been a party to any contract with Straiton and that "in fact was not in existence" in 2002. Finally, Binder stated he never commingled any assets with KBSI or transferred assets to KBSI "without adequate consideration."

Binder argued that, for all of Straiton's remaining causes of action, there were no triable issues of fact on the element of damages because the two-year statute of limitations barred claims for damages before 2016. Citing his declaration, Binder asserted that, because he ("in his individual capacity and/or as a fictitious business (d/b/a)") did not sell any jewelry after August 31, 2014, he (ditto) did not earn any revenues, income, or profit during "the applicable limitations period." Thus, Binder argued, Straiton could not establish "any ascertainable damages during the applicable limitations period, an essential element to his claims."

KBSI argued that it "has never been a party to any contract with Straiton" and that the court in *Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1513 (*Postal Instant Press*) rejected the alter ego doctrine known as "reverse piercing," which allows a creditor to reach corporate assets to satisfy claims against an individual shareholder. KBSI also argued that, even if the court decided to apply the doctrine of reverse piercing, Straiton did not "satisfy its basic elements" because he did not

5

present any evidence of undercapitalization, commingling of assets, or transfer of assets without adequate consideration.

Straiton opposed the motion, arguing that there was "no question that damages exist" because the "King Baby jewelry business" sold "millions of dollars of jewelry annually," that Straiton was "entitled to his share," and that "the assignment and transfer" of the jewelry business to KBSI did not "eliminate the contractual obligation to pay Straiton 12% of the revenue from the business." Citing cases distinguishing *Postal Instant Press*, *supra*, 162 Cal.App.4th 1510, Straiton argued Binder did not submit facts disproving he was the alter ego of KBSI. Straiton asserted that, because Binder and KBSI did not "factually overcome" the allegation there was a unity of interest between the two entities, KBSI should be held liable for the acts of Binder. Finally, Straiton argued that the statute of limitations did not bar his fifth cause of action for voidable transfer and that Binder and KBSI did not provide evidence Binder transferred the King Baby trademark to KBSI for adequate consideration. In addition to his declaration, Straiton submitted the declaration of Tanya Pontep, a certified public accountant, who stated that she reviewed an "incomplete general ledger" of KBSI and that, without examining "source documents," her ability "to uncover misuse[ ] of corporate assets or comingling [was] severely limited." With these disclaimers, Pontep said she found "multiple large sums of payments" that appeared "to be personal in nature."

The trial court granted the motion for summary judgment. The court observed that the parties had agreed Straiton "would only be entitled to damages incurred starting [in] January 2016" (because of the two-year statute of limitations) and that Binder

asserted he had not sold jewelry in his individual capacity or through a fictitious business since 2014.[1]  On whether Straiton could sue Binder as an alter ego of KBSI, the court found Straiton failed to raise a triable issue of material fact regarding whether KBSI was Binder's alter ego.  The court ruled that "the mere fact that Binder wholly owns KBSI [was] insufficient" and that Straiton did not present "evidence of commingling of funds."  The court ruled Pontep's declaration did not create a factual issue because it was based on "incomplete" records.

Following *Postal Instant Press*, *supra*, 162 Cal.App.4th 1510, the court concluded that Straiton could not maintain his claims against KBSI under the theory of "outside reverse piercing" and that, in any event, Straiton had not created a triable issue of material fact regarding whether Binder and KBSI were "alter egos of one another."  The court also ruled the applicable statute of limitations under the Uniform Voidable Transactions Act (Civ. Code, § 3439.04 et seq.) barred Straiton's cause of action for voidable transfer because Binder transferred the King Baby trademark to KBSI in 2008.  (See Civ. Code, § 3439.09, subds. (a)(1), (c).)  The court entered judgment in favor of Binder and KBSI, and Straiton timely appealed.

---

[1]  The statute of limitations for a breach of oral contract is two years.  (See Code Civ. Proc., § 339; *Calvary SPV I, LLC v. Watkins* (2019) 36 Cal.App.5th 1070, 1081; *Lucioni v. Bank of America, N.A.* (2016) 3 Cal.App.5th 150, 164.)  Thus, Straiton may only seek damages after August 31, 2016, two years before he filed this action.  It appears the court ruled the parties agreed Straiton could seek damages beginning in January 2016, rather than August 2016, based on Straiton's response to an interrogatory.

7

## DISCUSSION

A. *The Trial Court Erred in Granting Binder's Motion for Summary Adjudication on Straiton's Causes of Action for Breach of Contract, Money Had and Received, and an Accounting*

1. *Applicable Law and Standard of Review*

"'A court may grant a motion for summary judgment or summary adjudication "only when 'all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"' [Citations.] 'A defendant moving for summary adjudication of a cause of action must show that one or more elements cannot be established or that there is a complete defense.' [Citations.] We review an order granting a motion for summary adjudication de novo [citation] and 'decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.'" (*Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 241.).

"A moving defendant's initial burden is to present evidence that either conclusively negates an element of each of the plaintiffs' causes of action or shows that plaintiffs do not possess, and cannot reasonably obtain, evidence necessary to establish at least one element of each cause of action. [Citation.] 'Once the defendant satisfies its initial burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto."'" (*Taylor v. Financial Casualty & Surety, Inc.* (2021) 67 Cal.App.5th 966, 979; see Code Civ. Proc., § 437c, subd. (p)(2);

*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849-850.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850; accord, *Esplanade Prods., Inc. v. The Walt Disney Co.* (2023) 93 Cal.App.5th 793, 804-805; *Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594, 600.) ""We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."" (*Gonzales v. Mathis* (2021) 12 Cal.5th 29, 39; see *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.).

> 2.      *Binder Did Not Meet His Moving Burden To Negate the Damages Element of Straiton's Causes of Action for Breach of Oral Contract, Money Had and Received, and an Accounting*

Binder sought summary adjudication on Straiton's remaining causes of action by arguing Straiton could not show he suffered damages within the applicable limitations period. (See *Kaney v. Custance* (2022) 74 Cal.App.5th 201, 213 [""we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor""].) To meet his moving burden, Binder had to negate, or show Straiton could not obtain evidence on, the damages element of each cause of action. This was true for breach of contract (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821; *CSAA Ins. Exch. v. Hodroj* (2022) 72 Cal.App.5th 272, 276), money had and received (*Title Ins. Co.*

9

*v. State Bd. of Equalization* (1992) 4 Cal.4th 715, 731; *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 230; *Avidor v. Sutter's Place, Inc.* (2013) 212 Cal.App.4th 1439, 1454), and an accounting[2] (*Sass v. Cohen* (2020) 10 Cal.5th 861, 869; see *Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1413; *Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 910).

Binder did not meet his burden. Straiton alleged that, in exchange for his "investment and efforts" to help Binder start the internet jewelry business, Binder agreed to pay Straiton 12 percent of the revenues from "all sources" and that Binder failed to pay him "each and every year." Relying on Straiton's admission he was seeking damages only after January 2016, Binder argued he did not personally or through any fictitious business sell any jewelry, and thus did not earn or receive any revenue, after August 2014. Therefore, Binder argued, Straiton "utterly fails to establish any ascertainable damages."

But Binder's carefully crafted statement in his declaration that neither he nor his fictitious business earned or received any revenues after August 2014 did not cover all of the sources from which he may have earned or received revenue generated by the sale of the jewelry. Binder identified two sources from which he

---

[2]     To the extent an accounting is an independent cause of action and not just a type of remedy that depends on the validity of underlying claims. (See *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82, disapproved on another ground in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; *Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 95; see also *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 833 ["an accounting is derivative; it must be based on other claims"].)

could have received (but stated he did not receive) revenue: himself individually and doing business as a fictitious business. Significantly, Binder did not state he did not receive any revenue from or through KBSI, the corporation he wholly owned, during the limitations period, nor did Binder state he did not receive revenue from any other (in Straiton's words) "spin-off related enterprises." (See *Mosley v. Pacific Specialty Ins. Co.* (2020) 49 Cal.App.5th 417, 423 ["'[W]e construe the moving party's affidavits strictly'" and "'construe the opponent's affidavits liberally.'"].)  KBSI was one of the "sources" from which Straiton alleged he was entitled to receive 12% of revenues through Binder, and Binder did not state he received no earnings from that source during the prior two years.  That Binder (or a fictitious business of his) did not sell any jewelry after August 2014 did not mean Binder did not receive any revenue from the internet jewelry business, which Straiton alleged included the dba King Baby and the corporation KBSI, as well as other entities and sources.  Because Binder did not negate the damages element of Straiton's causes of action, he did not meet his initial burden on summary judgment.  (See *California-American Water Co. v. Marina Coast Water Dist.* (2022) 86 Cal.App.5th 1272, 1293 [defendant was not entitled to summary adjudication because it "failed to negate the express allegations pled in the complaint"]; *Union Pacific Railroad Co. v. Ameron Pole Products LLC* (2019) 43 Cal.App.5th 974, 982-983 [defendant was not entitled to summary judgment on the causation element of a negligence cause of action because, even though someone else caused the accident, the defendant did not negate the allegation its conduct contributed to the plaintiff's injuries]; *Moeller v. Fleming* (1982) 136 Cal.App.3d 241, 244, 245

11

[defendant "was not entitled to summary judgment" because his "affidavits neither negated a necessary element of [the plaintiff's] theory nor stated a complete defense to it"].)

Binder contends Straiton forfeited the argument "the scope of the agreement is ambiguous" enough to include KBSI by not making the argument in the trial court. But Straiton's position is not that the terms of the oral contract were ambiguous; his position is that Binder did not refute the allegations in the complaint. And Straiton (more or less) made that argument in his opposition to Binder's motion for summary judgment by contending "the moving party has the burden of not only eliminating triable issues of facts, it must do so on all of plaintiff's theories." In any event, an appellant challenging an order granting a motion for summary judgment or adjudication can always argue the moving party failed to meet its initial burden on summary judgment, even if the appellant did not make that argument in the trial court. (See *Scheer v. Regents of the University of California* (2022) 76 Cal.App.5th 904, 914-915 [plaintiff's failure to raise an argument in opposition to the motion for summary judgment did not preclude the reviewing court from considering the issue in determining whether the defendants met their moving burden]; *Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 366-367 [plaintiff "cannot be said to have waived the argument [that the defendants failed to meet their moving burden] by not having raised it below" because the "consequence" of the defendants' failure to demonstrate "the very applicability" of a doctrine that would show "their entitlement to judgment" is that "the motion should have been denied *regardless of the content of [the plaintiff's] opposition*"].)

12

B. *The Trial Court Did Not Err in Granting KBSI's Motion for Summary Adjudication on Straiton's Causes of Action for Breach of Contract, Money Had and Received, and an Accounting*

1. *Alter Ego Liability*

"The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. [Citation.] In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation: 'As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted. When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation.'" (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300; see *Lopez v. Escamilla* (2022) 79 Cal.App.5th 646, 650; *Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 221 (*Curci*); *Leek v. Cooper* (2011) 194 Cal.App.4th 399, 411 (*Leek*); see also *Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 ["A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation."].) "There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case. There are, nevertheless, two general requirements: '(1) that there be such unity of interest

13

and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.'" (*Mesler*, at p. 300; see *Curci*, at p. 221; *Leek*, at p. 411; *Sonora Diamond Corp.*, at p. 538.)

"'Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.' [Citations.] Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. [Citations.] No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." (*Sonora Diamond Corp. v. Superior Court*, *supra*, 83 Cal.App.4th at p. 538; see *Leek*, *supra*, 194 Cal.App.4th at pp. 417-418.)

> ### 2. *The Alter Ego Variant of Outside Reverse Piercing Does Not Apply*

"In appropriate circumstances, traditional veil piercing permits a party to pierce the corporate or limited liability company (LLC) veil 'so that an individual shareholder [or LLC member] may be held personally liable for claims against the corporation [or LLC].' [Citation.] 'Rather than seeking to hold an individual responsible for the acts of an entity, reverse veil piercing seeks to satisfy the debt of an individual through the assets of an entity of which the individual is an insider.'

14

[Citation.] 'Outside reverse veil piercing arises when the request for piercing comes from a third party outside the targeted business entity.'" (*Blizzard Energy, Inc. v. Schaefers* (2021) 71 Cal.App.5th 832, 840 (*Blizzard Energy*); see *Postal Instant Press*, *supra*, 162 Cal.App.4th at p. 1518.) However, in cases involving a corporation, as opposed to a limited liability company, "a third party creditor may not pierce the corporate veil to reach corporate assets to satisfy a shareholder's personal liability." (*Postal Instant Press*, at pp. 1512-1513.)

Because KBSI is a corporation, the doctrine of reverse piercing does not allow Straiton to reach KBSI's assets to satisfy Binder's personal liability to Straiton. (See *Postal Instant Press*, *supra*, 162 Cal.App.4th at pp. 1512-1513.) As the court in *Postal Instant Press* explained, "[o]utside reverse piercing can harm innocent shareholders and corporate creditors, and allow judgment creditors to bypass normal judgment collection procedures. . . . [¶] To address the many concerns created by outside reverse piercing, the courts recognizing the doctrine have created significant qualifications to its application," including that legal remedies are inadequate and that "innocent creditors" will not be harmed. (*Id*. at p. 1513.)

The cases Straiton relies on to support his assertion that "California law authorizes 'reverse piercing'" are distinguishable. In *Curci*, *supra*, 14 Cal.App.5th 214 the judgment creditor moved under Code of Civil Procedure section 187 to add a limited liability company as a judgment debtor; the individual debtor held virtually all the interest in the limited liability company and controlled its actions. (*Id*. at p. 217.) The court in *Curci* concluded *Postal Instant Press*, *supra*, 162 Cal.App.4th 1510 did not "preclude application of outside reverse veil piercing" in the

15

case because the decision in *Postal Instant Press* "was expressly limited to corporations," the individual debtor held a 99 percent interest in the limited liability company (so that there was "no 'innocent' member" of the limited liability company who could be adversely affected), and a creditor "does not have the same options against a member of [a limited liability company] as it has against the shareholder of a corporation."[3] (*Curci*, at pp. 222-223.)  The court in *Curci* also stated that the purpose of the limited liability company in that case, "to serve as a vehicle for holding and investing" the individual debtor's money, and the individual debtor's decision to cease making distributions to himself when the court entered judgment against him, among other facts, presented a situation "where reverse veil piercing might well be appropriate." (*Id.* at p. 224.)  As discussed, KBSI is a corporation, not a limited liability company, and there is no evidence that it was a repository of Binder's money or that Binder refused to pay himself from the proceeds of KBSI's jewelry sales.

In *Blizzard Energy*, *supra*, 71 Cal.App.5th 832 the court, without much analysis, followed *Curci*, *supra*, 14 Cal.App.5th 214, and concluded the case did not present the same concerns with outside reverse piercing the court in *Postal Instant Press*, *supra*, 162 Cal.App.4th 1510 identified. (*Blizzard Energy*, at

---

[3]    The court in *Curci* explained: "When the debtor is a shareholder, the creditor may step straight into the shoes of the debtor.  It may acquire the shares and, thereafter, 'have whatever rights the shareholder had in the corporation,' including the right to dividends, to vote, and to sell the shares," but "in stark contrast," if the debtor is a member of an LLC, "the creditor may only obtain a charging order against distributions made to the member." (*Curci*, *supra*, 14 Cal.App.5th at p. 223.)

16

p. 847.)  The court in *Blizzard Energy* concluded the creditor did not have an adequate legal remedy because the individual debtor had filed for bankruptcy protection and, to thwart the creditor's attempt to collect on the judgment, made clear he would prevent his limited liability companies from making distributions.  (*Id.* at p. 848.)  There is no such evidence here.  Straiton has the legal remedy of suing for breach of the oral contract, and nothing indicates that Binder is bankrupt.[4]

### 3.  *Even if Reverse Piercing Applied, Straiton Did Not Create a Triable Issue of Material Fact*

Even if the doctrine of outside reverse piercing applied, the trial court correctly concluded Straiton did not create a triable issue of material fact regarding whether "Binder and KBSI are

---

[4]  The recent case of *Reliant Life Shares, LLC v. Cooper* (2023) 90 Cal.App.5th 14, like *Curci*, *supra*, 14 Cal.App.5th 214 and *Blizzard Energy*, *supra*, 71 Cal.App.5th 832, involved whether the plaintiff could hold a limited liability company and other related entities financially responsible for the misdeeds of two individuals.  (*Reliant Life Shares*, at pp. 37-38.)  The court in *Reliant Life Shares* cited *Curci*, which as discussed concluded the holding of *Postal Instant Press*, *supra*, 162 Cal.App.4th 1510 applied only to corporations[*] and further distinguished *Postal Instant Press* on the ground the "equities of the case did not justify disregarding the corporate form."  (*Reliant Life Shares*, at p. 38.)  As discussed, KBSI is a corporation, and, as we will discuss, the equities here do not justify disregarding the corporate form.

> [*] Although it appears one of the various entities in *Reliant Life Shares* was a corporation, the court did not distinguish this corporate entity from the other limited liability companies in the case.  (*Id.* at p. 37.)

17

alter egos of one another."  Straiton alleged that KBSI was the alter ego of Binder, that Binder "controls and dominates" KBSI, that "any individuality and separateness" between Binder and KBSI "has ceased," and that recognizing the separate existence of KBSI "would constitute an abuse of the corporate privilege and would sanction fraud."  As discussed, Binder stated in his declaration:  "There does not and has never existed such a unity of interest in [his] ownership of [KBSI] such that any separateness has ceased to exist between the two, particularly because there has never been any commingling of assets or transfers of assets without adequate consideration."  Binder also stated that "there has not been any transfer between [him] and [KBSI] within the past seven (7) years, whether related to any contract between Straiton and [himself] or otherwise."  Though sparse, this evidence was sufficient to shift the burden to Straiton to create a triable issue of material fact.  (Cf. *Krantz v. BT Visual Images* (2001) 89 Cal.App.4th 164, 173 [declarations from attorneys and a company executive "stating that the alter ego and agency allegations of the amended complaint were untrue" did not shift the burden of proof to the plaintiff].)

Straiton did not meet his responsive burden.  Straiton did not dispute in his separate statement that Binder did not transfer any assets without adequate consideration, and Straiton did not submit admissible evidence Binder and KBSI commingled their assets.  As discussed, the only evidence Straiton presented in opposition to the motion for summary judgment was that Binder wholly owns KBSI, that Binder and KBSI share the same address, and that Binder is the only officer and director of KBSI.  This evidence was insufficient to create a triable issue of material fact on whether KBSI was Binder's alter ego.  (See *Leek*, *supra*,

18

194 Cal.App.4th at p. 415 ["[a]n allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity"]; cf. *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 812-813 [plaintiff's evidence the defendant provided startup funding for the corporation, "ensured a low cash balance," and was involved in all "'movement in the company,'" created a triable issue of material fact regarding whether the defendant and the corporation "had such a unity of interest that '"the separate personalities of the corporation and the individual no longer exist[ed]"'"].)

Straiton's accounting expert, Pontep, reviewed a general ledger of KBSI and said it revealed various payments that did not seem related to the business. The trial court did not err in ruling this statement was not sufficient to create a triable issue of material fact. Pontep admitted the record she reviewed was incomplete. She went so far as to conclude that reviewing the general ledger to uncover commingling of assets was "pointless" because she would need to examine source documents, such as vendor invoices, credit card statements, bank statements, and canceled checks, which her declaration suggests she didn't have. (See *San Francisco Print Media Co. v. The Hearst Corp.* (2020) 44 Cal.App.5th 952, 961-962 [an ""'expert's opinion may not be based 'on assumptions of fact without evidentiary support [citation], or on speculative or conjectural factors'"'"]; *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 155 ["'Cases dismissing expert declarations in connection with summary judgment motions do so on the basis that the declarations established that the opinions were either

19

speculative, lacked foundation, or were stated without sufficient certainty.'"].)[5]

Straiton also failed to create a triable issue of material fact regarding whether adherence to the separate entities would produce "an unjust or inequitable result." (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073; see *Mesler v. Bragg Management Co.*, *supra*, 39 Cal.3d at p. 300.) Straiton did not present any evidence that Binder will escape liability from his obligations under the contract or that, if Straiton prevails in this action, he will not be able to collect on a judgment against Binder. (Cf. *JPV I L.P. v. Koetting* (2023) 88 Cal.App.5th 172, 200 [evidence the limited liability company's "bank accounts were emptied" a "month after the judgment was entered," which left the judgment creditor "unable to collect on the sizeable damages award," "when combined with the other factors indicating inequitable uses of the corporate form, may satisfy the unjust result element for alter ego liability"]; *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1109 ["it would be inequitable to permit [the defendant], the alter ego of [the judgment debtor], to shift liability to [the judgment debtor] after ensuring that [the judgment debtor] would have no funds to pay its debts"]; *Claremont Press Publishing Co. v. Barksdale* (1960) 187 Cal.App.2d 813, 817 ["To recognize the separate entity of the corporation here would permit [the]

---

[5] Straiton does not argue that he did not have a sufficient opportunity to conduct discovery or that he asked the court to continue the hearing on the motion for summary judgment under Code of Civil Procedure section 437c, subdivision (h), to conduct additional discovery.

defendant and [his associate] to secure for their venture the benefit of plaintiff's printing services without liability therefor."].)

*Taylor v. Newton* (1953) 117 Cal.App.2d 752, cited by Straiton, is distinguishable.  In that case the trial court found the defendant, who failed to repay money the plaintiff had loaned him, divested himself of all property from which a judgment could be satisfied, and formed a corporation to which the defendant transferred "various real properties" without consideration.  (*Id.* at pp. 753-754, 756.)  The trial court also found that the corporation did not have meetings or by-laws and that the defendant "used the defendant corporation for his own purposes." (*Id.* at p. 756.)  The court in *Taylor v. Newton* concluded the evidence "abundantly supported" the trial court's finding the corporation was the alter ego of the defendant, stating that "to adhere to the fiction of a separate existence" of the corporation "would promote an injustice" to the defendant's creditors."  (*Id.* at p. 761.)  In contrast, Straiton did not present evidence that Binder was insolvent, that KBSI failed to observe corporate formalities, or that, as discussed, Binder transferred his assets to KBSI without consideration.

### 4.    *Straiton Forfeited His Successor Liability Argument*

Straiton argues for the first time on appeal that, "[t]hrough the doctrine of successor liability, [KBSI] is responsible for Binder's debt to Straiton."  Straiton asserts that the record established that KBSI was a "'mere continuation'" of King Baby and that "'the transfer of assets to [KBSI]'" was for the "'fraudulent purpose of escaping liability.'"  The argument is forfeited and meritless.

When a corporation purchases the principal assets of another corporation, the purchaser does not assume the seller's liabilities unless: "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." (*Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28; see *Beatrice Co. v. State Bd. of Equalization* (1993) 6 Cal.4th 767, 778; *Cleveland v. Johnson* (2012) 209 Cal.App.4th 1315, 1327; *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1120.) A corporation acquiring the assets of another corporation "is the latter's mere continuation and therefore liable for its debts . . . only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations.'" (*Beatrice*, at p. 778; see *Cleveland*, at p. 1327.) Successor liability "is an equitable doctrine that applies when a purchasing corporation is merely a continuation of the selling corporation or the asset sale was fraudulently entered to escape debts and liabilities. [Citations.] Successor liability requires an underlying cause of action and merely extends the liability on that cause of action to a corporation that would not otherwise be liable." (*Brown Bark III, L.P. v. Haver* (2013) 219 Cal.App.4th 809, 822-823.)

Straiton did not allege KBSI was liable under a successor liability theory. Nor did he plead any of the elements relevant to establishing KBSI's liability as a successor entity. KBSI did not

address the doctrine of successor liability in its motion for summary judgment because Straiton did not allege that theory. (See *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444 ["'A moving party seeking summary judgment or adjudication is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion.'"]; *Leek, supra*, 194 Cal.App.4th at p. 406 [where the plaintiffs "did not adequately plead an alter ego theory of recovery in their complaint," the defendant "was under no duty to negate an alter ego claim"]; see also *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 [the pleadings "'set the boundaries of the issues to be resolved at summary judgment'"]; *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 367 [same].)

Nor did Straiton argue in opposition to the motion for summary judgment that KBSI did not negate his factual allegations under the successor liability doctrine (because there were no such allegations). In one sentence, buried in a paragraph under the subheading, "The Defendants Must Show that Under No Possible Hypothesis within the Reasonable Purview of the Allegations of the Complaint is there a Material Question of Fact Which Requires Examination by Trial," Straiton stated Binder and KBSI did not "offer any facts to attempt to demonstrate that . . . Binder dba King Baby acted different[ly] from or conducted business in any manner different from the successor enterprise, King Baby Studio, Inc." Straiton, however, did not discuss any of the elements of successor liability or cite any evidence that might

23

support liability under such a theory. Neither did Straiton mention or cite any evidence in his separate statement of disputed material facts in opposition to the motion for summary judgment on the issue of successor liability. Instead, Straiton's factual and legal arguments focused almost exclusively on whether he suffered damages during the two-year limitations period and whether KBSI was Binder's alter ego. (See *Venice Coalition to Preserve Unique Community Character v. City of Los Angeles* (2019) 31 Cal.App.5th 42, 54 [reviewing court would not address a new theory of liability raised for the first time on appeal because the plaintiffs "did not . . . raise this issue in the trial court, nor did they include the underlying facts to support this allegation in their separate statement of facts opposing summary judgment"].) By failing to allege or argue successor liability in the trial court, Straiton forfeited the issue.

Straiton suggests he presented the "substance" of a successor liability theory in the trial court when he "insisted" in opposition to the motion for summary judgment that "summary judgment could not derive from the fact that 'Binder no longer sells King Baby jewelry in his personal capacity, but instead through his wholly owned corporation.'" Here, however, is what Straiton actually argued: "Now, Defendants maintain a wacky argument that Straiton's case is over because Binder no longer sells King Baby jewelry in his personal capacity, but instead through his wholly owned corporation. Defendants' argument ignores the fundamental principles of contract law. A contracting party is not released of his contractual obligations by assigning or delegating the contract to another person." Straiton was arguing Binder was liable regardless of any steps Binder took to assign or

delegate the contract to another person; Straiton was not arguing KBSI was liable under the successor liability theory.

Straiton admits successor liability and alter ego liability "are distinct concepts," but nevertheless argues "they often overlap." Although Straiton's argument on this point is not entirely clear,[6] he appears to be arguing that his allegation KBSI "'was incorporated to facilitate the transfer of . . . Mitchell Binder d/b/a King Baby's jewelry business to avoid liability'" stated a claim against KBSI both as an alter ego and a successor corporation. It did not. Straiton did not allege that, because Binder created KBSI to escape liability, KBSI should be liable for Binder's obligations. Rather, Straiton alleged KBSI was the alter ego of Binder "in that" Binder controlled and dominated KBSI, "which was created" to enable Binder to "escape liability." No reasonable reading of this alter ego allegation suggests Straiton intended to allege KBSI assumed the liabilities of Binder under the successor liability doctrine. (See *Brown Bark III, L.P. v. Haver, supra,* 219 Cal.App.4th at p. 823 ["the showing required to invoke" the equitable doctrines of alter ego and successor liability "is different"]; see also *Leek, supra,* 194 Cal.App.4th at p. 415 ["A complaint must set forth the facts with sufficient precision to put the defendant on notice about what the plaintiff is complaining and what remedies are being sought."].)

---

[6] On page 31 of his opening brief Straiton states: "The law bars a party from evading a debt by shifting assets to a new business—or himself." This sentence, however, appears in a section about alter ego liability. In his reply brief Straiton argues he alleged facts under the successor liability doctrine, but he cites the trial court's ruling on the demurrer by Binder and KBSI.

25

C.   *Straiton Forfeited Any Challenge to the Trial Court's Ruling on the Cause of Action for Voidable Transfer*

In his opening brief Straiton does not challenge the trial court's order granting the motion for summary adjudication on his cause of action for voidable transfer.  As discussed, the trial court ruled that the statute of limitations (seven years) under the Uniform Voidable Transactions Act barred Straiton's cause of action because the "only evidence of any transfer is a document showing assignment of trademarks from Binder to KBSI dated 2008."  (See Civ. Code, § 3439.09, subd. (c); *PGA West Residential Assn., Inc. v. Hulven Internat., Inc.* (2017) 14 Cal.App.5th 156, 170.)[7]  Although Straiton states in his reply brief that the statute of limitations "does not bar [him] from recovering his 12% share of the revenues" because he "merely seeks enforcement of the contract" and "does not seek to reverse the 2008 asset-shifting," we do not consider the argument, made as it was for the first time in his reply brief.  (See *Raceway Ford Cases* (2016) 2 Cal.5th 161, 178; *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 646; *Shih v. Starbucks Corp.* (2020) 53 Cal.App.5th 1063, 1071, fn. 4.)

## DISPOSITION

The judgment in favor of KBSI is affirmed, and the judgment in favor of Binder is reversed.  The trial court is directed to vacate its order granting Binder's motion for summary

---

[7]   In 2015 the Legislature renamed the Uniform Fraudulent Transfer Act the Uniform Voidable Transactions Act.  (See *Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 120.)

26

judgment and enter a new order denying that motion; denying Binder's motion for summary adjudication on Straiton's causes of action for breach of oral contract, money had and received, and accounting; and granting Binder's motion for summary adjudication on Straiton's cause of action for voidable transfer. The parties are to bear their costs on appeal.


SEGAL,  J.


We concur:


PERLUSS, P. J.


MARTINEZ, J.