**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| G.P.P., INC., doing business as Guardian Innovative Solutions, | No. 23-4167 |
| | D.C. No. 1:15-cv-00321-SKO |
| *Plaintiff - Appellee*, | |
| v. | |
| GUARDIAN PROTECTION PRODUCTS, INC.; RPM WOOD FINISHES GROUP, INC., | OPINION |
| *Defendants - Appellants*. | |

Appeal from the United States District Court
for the Eastern District of California
Sheila K. Oberto, Magistrate Judge, Presiding

Argued and Submitted December 3, 2024
San Francisco, California

Filed January 21, 2025

Before: TIMOTHY M. TYMKOVICH, MILAN D. SMITH, JR., and PATRICK J. BUMATAY, Circuit Judges.[*]

---

[*] The Honorable Timothy M. Tymkovich, United States Circuit Judge for the Court of Appeals, 10th Circuit, sitting by designation.

Opinion by Judge Milan D. Smith, Jr.

**SUMMARY**[**]

**Attorney's Fees / California Law**

The panel reversed in part and affirmed in part the district court's award of over $4 million in attorney's fees to G.P.P., Inc. d/b/a Guardian Innovative Solutions (GIS) in a long-running breach of contract action against Guardian Protection Products, Inc. (Guardian) and RPM Wood Finishes Group, Inc. (RPM).

Applying the standards set forth in Cal. Civ. Code § 1717, the district court deemed GIS the prevailing party and found that neither Guardian nor RPM was entitled to fees.

The panel held that the district court employed an appropriate methodology in deeming GIS the prevailing party. As § 1717 requires, the district court conducted a holistic analysis in which it evaluated Guardian and RPM independently and fairly evaluated the parties' litigation objectives. The panel also found no error in the district court's determination that GIS was entitled to fees from Guardian.

The panel held, however, that the district court erred in analyzing RPM's entitlement to fees from GIS insofar as it turned on a set of claims that GIS abandoned by declining to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

litigate at trial. Although the district court deemed those claims voluntarily dismissed for purposes of § 1717, the panel concluded that the claims were not voluntarily dismissed because GIS failed to provide adequate notice of its intent to abandon them. The panel reversed as to the abandoned claims and remanded for the district court to determine what corresponding fees, if any, were due to RPM.

## COUNSEL

Dylan G. Savage (argued), Wilson Sonsini Goodrich & Rosati PC, New York, New York; Colleen Bal, John P. Flynn, and Joshua A. Baskin, Wilson Sonsini Goodrich & Rosati PC, San Francsico, California; Dylan J. Liddiard, Wilson Sonsini Goodrich & Rosati PC, Palo Alto, California; for Plaintiff-Appellee.

Calvin E. Davis (argued), Aaron P. Rudin, and Rebecca Krikorian, Gordon Rees Scully Mansukhani LLP, Los Angeles, California; for Defendants-Appellants.

# OPINION

M. SMITH, Circuit Judge:

Nearly a decade into this long-running breach of contract action, Defendants-Appellants Guardian Protection Products, Inc. (Guardian) and RPM Wood Finishes Group, Inc. (RPM) appeal the district court's award of over $4 million in attorney's fees to Plaintiff-Appellee G.P.P., Inc. d/b/a Guardian Innovative Solutions (GIS). The fee award follows years of litigation and two trials, first in 2017, and then again in 2021, at which GIS and Defendants each prevailed as to certain claims and counterclaims. Reviewing this lengthy history, and applying the standards set forth in Cal. Civ. Code § 1717, the district court deemed GIS the prevailing party and found that neither Guardian nor RPM was entitled to fees. Defendants protest this outcome, arguing that the district court's improper methodology and analysis led to an improper result.

We disagree with Defendants that the district court's methodology was improper. As § 1717 requires, the district court conducted a holistic analysis in which it evaluated Guardian and RPM independently and fairly evaluated the parties' litigation objectives. We also discern no error in the district court's determination that GIS was entitled to fees from Guardian. Nevertheless, we agree that the district court erred in analyzing RPM's entitlement to fees from GIS insofar as it turned on of a set of claims that GIS abandoned by declining to litigate at trial. Although the district court deemed these claims voluntarily dismissed for purposes of § 1717, we conclude that the claims were not voluntarily dismissed because GIS failed to provide adequate notice of its intent to abandon them. Accordingly, we reverse as to the

abandoned claims and remand to the district court to determine what corresponding fees, if any, are due to RPM.

## FACTUAL AND PROCEDURAL BACKGROUND

Guardian is a Delaware corporation that sells furniture protection products; GIS is a Pennsylvania corporation that provides distribution services. Between 1988 and 1998, Guardian and GIS entered into nine warehousing distributor agreements (WDAs) authorizing GIS to serve as a distributor of Guardian's products. Each WDA contained a choice-of-law provision designating the application of California law and an attorney's fee provision stating that "should any action be initiated upon this contract, the party prevailing . . . shall be awarded its actual attorney fees[.]"

In October 2013, Guardian purported to terminate three of the WDAs and threatened to terminate the other six. In response, GIS sued Guardian for breach of contract, bad faith, declaratory judgment, negligence *per se*, and violation of various state and federal franchise laws. GIS later filed an amended complaint naming RPM as a defendant with respect to certain claims based on the theory that it was the alter ego of Guardian. Guardian, but not RPM, countersued for declaratory relief, breach of contract, bad faith, and violations of the California Commercial Code.

In June 2017, following resolution of Guardian's motion to dismiss and the parties' cross-motions for summary judgment, the parties proceeded to a jury trial on the remaining claims and counterclaims. Guardian elected to submit all five of its remaining counterclaims to the jury. GIS, in contrast, submitted all of its remaining claims but for five equitable causes of action, which—without explanation—it declined to include in its proposed jury instructions or verdict form. Following a five-day trial, the

jury rejected each of the claims and counterclaims that had been submitted. It declined to award damages to any party.

Following trial, GIS renewed its motion for judgment as a matter of law. When the district court denied that motion, GIS appealed the decision, along with the district court's prior order of summary judgment, to our court. *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 788 F. App'x 452, 454 (9th Cir. 2019). On appeal, GIS argued that the district court had erred in granting summary judgment and denying judgment as a matter of law with respect to certain claims. *Id.* at 454–55. We agreed in part and reversed a handful of designated claims with the instruction that they be retried on remand. *Id.* The parties then proceeded to a new trial in December 2021. This time, the jury found for GIS on each of the claims it submitted. It awarded GIS $12 million in damages, which it reduced to $6 million after finding that GIS had failed to mitigate its losses.[1]

In September 2023, the parties filed cross-motions for attorney's fees, which are the subject of this appeal. GIS sought fees solely from Guardian; Guardian and RPM each sought fees from GIS. Applying the framework set forth in Cal. Civ. Code § 1717, which governs the recovery of attorney's fees pursuant to an underlying contract, the district court granted GIS's motion, denied Guardian and RPM's motion, and awarded GIS its full requested fees of $4,353,283. Following an unsuccessful motion for

---

[1] Following the 2021 trial, GIS filed a second appeal in which it challenged certain of the district court's pretrial rulings. *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, Nos. 22-15569, 22-15638, 2023 WL 4311611 (9th Cir. July 3, 2023). We rejected GIS's challenges and affirmed the jury verdict. *Id.* at *3.

reconsideration, Guardian and RPM now appeal from the district court's decision.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. *Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co.*, 844 F.3d 1133, 1141 (9th Cir. 2017); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). "A district court's award of attorney fees is generally subject to an abuse of discretion standard of review on appeal." *Hall v. Bolger*, 768 F.2d 1148, 1150 (9th Cir. 1985). However, because Defendants "contend the district court made a legal error in determining the fee award, . . . *de novo* review is required." *Thomas v. City of Tacoma*, 410 F.3d 644, 647 (9th Cir. 2005). "[W]e review [the amount of] attorney fees awarded under state law for abuse of discretion." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 828 (9th Cir. 2018).

## ANALYSIS

Section 1717 of the California Civil Code provides that, in "any action on a contract" that "specifically provides [for] attorney's fees and costs," the "party who is determined to be the party prevailing on the contract . . . shall be entitled to reasonable attorney's fees in addition to other costs." Cal. Civ. Code § 1717(a). Section 1717 defines the "prevailing party" as "the party who recovered a greater relief in the action on the contract." *Id.* § 1717(b)(1). It specifies, however, that a court "may also determine that there is no party prevailing on the contract for purposes of this section." *Id.* Further, "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes" of § 1717. *Id.* § 1717(b)(2).

The California Supreme Court provided further guidance on these principles in *Hsu v. Abbara*, 9 Cal. 4th 863 (1995). As it explained, pursuant to § 1717, "when the results of the litigation on the contract claims are *not* mixed—that is, when the decision on the litigated contract claims is purely good news for one party and bad news for the other— . . . a trial court has no discretion to deny attorney fees to the successful litigant." *Hsu*, 9 Cal. 4th at 875–76. On the other hand, "[i]f neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Scott Co. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (1999); *see Hsu*, 9 Cal. 4th at 876. In determining who is the "prevailing party," the court "is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Hsu*, 9 Cal. 4th at 876. "[C]ourts should respect substance rather than form" when evaluating litigation success through the lens of these "equitable considerations." *Id.* at 877.

Although the parties agree that *Hsu*'s mandate is clear, Defendants contend that the district court diverged from it in four ways: (1) It applied an improper methodology by failing to evaluate the two defendants independently; (2) it failed to consider appropriate equitable factors; (3) it wrongly awarded fees to GIS from Guardian; and (4) it improperly evaluated RPM's request for fees. We reject the first three arguments and find that the district court's methodology, considerations, and analysis of GIS's request for fees were appropriate. However, we agree that the district court erred in its analysis of RPM's request for fees

insofar as that analysis turned on the erroneous characterization of a set of claims that GIS abandoned prior to trial.

## I. The District Court Employed an Appropriate Methodology.

Defendants first contend that the district court erred in the approach by which it identified the prevailing party pursuant to § 1717. That approach was comprised of three steps. The district court began by determining which of the parties' claims fell within the scope of the WDAs and, thus, provided a basis for attorney's fees. *See* Cal. Civ. Code § 1717(a). The district court then analyzed, on a claim-by-claim basis, which party had recovered "greater relief" with respect to each cause of action. *Id.* § 1717(b)(1). Finally, the district court concluded by reviewing its overall "tally" of claims, along with pertinent equitable considerations relating to the parties' goals and achievements throughout the litigation. *See Hsu*, 9 Cal. 4th at 876. At the end of this process, the district court identified GIS as the prevailing party and awarded it its requested fees of $4,353,283.

Defendants argue that the district court's methodology was improper because it failed to analyze the prevailing party separately with respect to Guardian and RPM, respectively. In support of their position, Defendants cite to *Brown Bark III, L.P. v. Haver*, 219 Cal. App. 4th 809, 814–15 (2013), in which the parties sought attorney's fees stemming from litigation in which the plaintiff obtained a default judgment against one defendant but no relief against another. When the district court denied the latter defendant's motion for fees, the plaintiff argued that this result was supported, and that it should be considered the prevailing party as to both defendants, because it had directly prevailed

as against the first.  *Id.* at 825.  The California Court of Appeals rejected this argument, holding that "[w]hen a plaintiff sues more than one independent party on the same contract, the trial court must separately determine who prevailed on the plaintiff's claim against each independent defendant." *Id.* at 825–26.  Applying § 1717, the court found that the second defendant was a prevailing party and reversed the district court's denial of its motion for fees.  *Id.* at 826–31.

Defendants contend that the district court improperly aggregated its analysis of the prevailing party here in contravention of *Brown Bark*.  In other words, because Guardian and RPM both separately sought fees from GIS, Defendants argue that the district court was obligated to analyze separately whether each of these parties prevailed as against GIS.  But the district court satisfied this obligation by bifurcating the core of its analysis—the claim-by-claim review of each claim and counterclaim—with respect to Guardian and RPM.  Analyzing certain claims, the district court found that Defendants, collectively, had prevailed. Analyzing other claims, the district court found that the prevailing party analysis produced one result "[a]s against Guardian," and a separate and different result "[a]s against RPM."  As a result of these independent analyses, the district court was left with a "tally" of wins that was individualized with respect to each defendant:  As between GIS and Guardian, GIS prevailed on eight claims, and Guardian prevailed on five; as between GIS and RPM, RPM prevailed on four claims, while GIS's five other claims against RPM were abandoned.

This bifurcated result complies with *Brown Bark*'s requirement that trial courts "separately determine who prevailed on the plaintiff's claim[s] against each

independent defendant." 219 Cal. App. 4th at 825–26; *see also Burkhalter Kessler Clement & George LLP v. Hamilton*, 19 Cal. App. 5th 38, 45 (2018) (claims against two litigants "must be separately examined to determine the 'prevailing party' as between those two litigants"). Nevertheless, Defendants contend that the district court's analysis was not truly separate because it concluded with certain comments that aggregated the litigation achievements of Guardian and RPM. For example, the court noted that "GIS [wa]s the prevailing party" because it "prosecuted and defended a total of eight claims against Guardian." The court further described GIS as "achiev[ing] 'greater relief' than Defendants 'in the actions on the contracts.'" These statements reflect that the district court's separate analysis of each defendant led it to the collective conclusion that neither defendant—Guardian or RPM—had prevailed as against GIS. But these statements fall short of reflecting noncompliance with *Brown Bark*. Instead, because the core of the court's analysis was appropriately bifurcated, reversal pursuant to *Brown Bark* is unsupported.[2]

---

[2] The district court's stray comments can further be contextualized in light of the specific demands made in each of the party's motions. As noted, because both Guardian and RPM sought fees from GIS, the district court was required to evaluate whether each of those defendants had been the "prevailing party" as against GIS. *See* Cal. Civ. Code § 1717(a); *Brown Bark*, 219 Cal. App. 4th at 825. GIS, by contrast, sought fees solely from Guardian and not from RPM. Therefore, adjudicating GIS's fee motion required the district court only to evaluate whether GIS had prevailed as against Guardian, but not whether GIS had prevailed as against RPM.

## II. The District Court Appropriately Evaluated Equitable Considerations.

Defendants next contend that the district court erred by failing to consider pertinent factors that were applicable to its prevailing party analysis. This argument follows from *Hsu*, which, as noted, instructed that "in deciding whether there is a 'party prevailing on the contract,' the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." 9 Cal. 4th at 876. Defendants contend that, in recognition of *Hsu*, the district court was obligated to premise its analysis of the prevailing party on three additional considerations: (1) GIS's pursuit of additional forms of relief that it did not achieve; (2) Guardian's successful litigation of an affirmative mitigation defense; (3) and GIS's assorted litigation "failures."

These arguments are not persuasive. As a threshold matter, Defendants assign fault based on the district court's purported failure to comment on specific events that transpired during this litigation. That is not what *Hsu* requires. Although *Hsu* mandates "a comparison of the extent to which each party ha[s] succeeded and failed to succeed in its contentions," it encourages courts to "respect substance rather than form," and emphasizes that § 1717 "vests the trial court with discretion" in evaluating applicable equitable considerations. 9 Cal. 4th at 871, 876 (simplified). California courts have described this as a "pragmatic approach" that should focus on which "party succeeded on a practical level." *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal. App. 4th 140, 150 (2006). These precedents suggest that, so long as a court holistically

"evaluate[s] litigation success in light of the part[ies'] overall demands and objectives," the mandate of *Hsu* is satisfied. *Berkla v. Corel Corp.*, 302 F.3d 909, 920 (9th Cir. 2002).

The district court satisfied that mandate here. Although it conducted the aforementioned "tally" of the parties' claim-by-claim victories, it described this "rudimentary calculation" as "only part of the analysis." The court then proceeded to consider appropriate equitable considerations, including GIS's successful defense of "all of Guardian's counterclaims," the "pyrrhic" nature of RPM's trial victories, GIS's "unqualified victory on appeal" before this court, and the jury's "ultimate[] award[] [of] millions of dollars." These considerations each bore on the "gravamen of this lawsuit"—"the allegation that Guardian, either directly or through its alter ego RPM, diminished and/or deprived GIS of its rights under the various WDAs." In finding that GIS achieved a litigation victory as to that "pervading issue," the district court developed and focused its analysis appropriately. *See Castro v. Superior Court*, 116 Cal. App. 4th 1010, 1020 (2004) (in determining the prevailing party, courts should focus on which party "achieved its main litigation objective").[3]

---

[3] Defendants also contend that, to the extent the district court did consider litigation objectives, it erroneously did so with respect to individual claims, as opposed to considering this factor in the aggregate. However, Defendants cite no authority establishing that the district court was required to run its analysis on a collective, as opposed to claim-based, level. To the contrary, *Hsu* instructed that district courts "compare the relief awarded on the contract *claim or claims* with the parties' demands on those same claims." 9 Cal. 4th at 876 (emphasis added).

In any event, the district court did consider the specific examples of litigation success or failures to which Defendants refer.  First, Defendants contend that the district court failed to consider additional forms of relief for which GIS unsuccessfully advocated, including restitution, disgorgement, lost goodwill, treble damages, and declaratory relief.  But the district court expressly or implicitly considered many of these forms of relief.  Further, although Defendants suggest that they mounted a successful defense against these forms of relief, a more accurate assessment would recognize that both parties achieved victories in this domain.  For example, whereas Defendants successfully moved to dismiss GIS's request for declaratory relief and to exclude evidence relating to restitution, goodwill, and increased costs, GIS successfully overcame Guardian's motions to exclude evidence of lost profits, and voluntarily abandoned most of the other forms of relief it had originally pleaded.  Therefore, even if the district court had considered these topics in greater detail, they would not have swayed its designation of the prevailing party.  *See, e.g.*, *Krueger v. Bank of Am.*, 145 Cal. App. 3d 204, 217 (1983).

Next, Defendants contend that the district court erred by failing to consider litigation "failures" suffered by GIS in this matter.  Specifically, Defendants criticize the district court for "refus[ing] to consider" GIS's "failed second appeal" arising out of the second trial.  But the district court did address GIS's second appeal.  It found that, though the appeal was not successful, GIS's "failure . . . to achieve all of its litigation objectives d[id] not preclude a finding that [it] prevailed."  The court premised its analysis, in part, on its view that critical review of failed appeals for purposes of fee awards "could have a chilling effect on a party's right to

pursue an appeal." Defendants provide no authority to suggest that this view was erroneous.

Lastly, Defendants contend that the district court erred by failing to consider Guardian's successful litigation of its affirmative defense, i.e., that GIS failed to mitigate $6 million in damages. Once again, the district court did consider this issue. It recognized, for example, that "Guardian's lack-of-mitigation affirmative defense . . . result[ed] in a net award of $6 million to GIS." But the district court also acknowledged that the jury did not "value[] Guardian's affirmative defense as equal to the value of GIS's claims." The district court thus found that, because GIS overcame the affirmative defense to receive a sizable award of damages, the "net judgment in its favor" was a "significant" marker of litigation success. Contrary to Defendants' contentions, we discern no fault in this logic, or in the court's overall assessment of equitable considerations. *See Sears v. Baccaglio*, 60 Cal. App. 4th 1136, 1156 (1998) ("[T]he trial court's rejection of a strong showing of . . . a sizable net monetary recovery[] would risk abuse of discretion under section 1717.").

## III. The District Court Did Not Err in Awarding Fees to GIS.

As a result of its claim-by-claim analysis and review of equitable considerations, the district court found that GIS prevailed as against Guardian and awarded it fees. Defendants argues that this result was incorrect because (1) GIS was not the prevailing party, and (2) the district court failed to apportion GIS's fees. We disagree.

### a. GIS Prevailed as Against Guardian.

Defendants first contest the district court's prevailing party determination. They specifically contend that the litigation outcome as between Guardian and GIS was "so equivocal" as to require a finding that neither party prevailed. Defendants emphasize that the district court's final judgment reflects wins by both parties, and that GIS did not achieve a complete victory at the 2021 trial due to, at a minimum, Guardian's successful litigation of its affirmative mitigation defense.

We are not persuaded by these arguments. Notably, Defendants focus on the parties' respective achievements and stop short of any claim that Guardian achieved a total victory with respect to the contract claims at issue. This concession is arguably fatal to Defendants' challenge. As noted, pursuant to the applicable framework set forth in *Hsu*, a trial court lacks discretion to withhold the prevailing party designation from a party that "achieves a complete victory on all the contract claims" in an action. *Scott Co.*, 20 Cal. 4th at 1109; *see Hsu*, 9 Cal. 4th at 876. However, when neither party achieves a complete victory, "it is within the discretion of the trial court to determine which party prevailed on the contract[.]" *Scott Co.*, 20 Cal. 4th at 1109. Here, because Defendants do not contend that Guardian achieved a complete victory, the district court's identification of the prevailing party is insulated by that discretion. *See Graciano*, 144 Cal. App. 4th at 150–51 (in its discretion, "a court may base its attorney fees decision on a pragmatic definition of the extent to which each party has realized its litigation objectives").

We conclude that the district court did not abuse its discretion in identifying GIS as the prevailing party.

Although GIS prevailed on all of its contract claims in the 2021 trial, it secured only a portion of the damages and other forms of relief it sought, and it ultimately failed to prevail on its appeal stemming from that trial. This "mixed" result deprives GIS—and Guardian—of an automatic entitlement to fees. *Hsu*, 9 Cal. 4th at 876. However, "even though [GIS] did not successfully obtain all the relief which [it] sought in the action," it is a "general rule" that "where claims and counterclaims arise in connection with a contract containing an attorney's fees provision, the party who obtains a favorable judgment is deemed to be the prevailing party." *Epstein v. Frank*, 125 Cal. App. 3d 111, 124 (1981). GIS falls within the constraints of this rule. With respect to its core contention that Guardian wrongfully breached the WDAs, GIS achieved a full victory by defending against liability on Guardian's counterclaims, convincing the jury that Guardian violated its contracts, and achieving $6 million in damages on its affirmative claims. These achievements make GIS, "in any practical sense, [the] prevailing party." *Close v. Sotheby's, Inc.*, 909 F.3d 1204, 1213 (9th Cir. 2018); *see also Hsu*, 9 Cal. 4th at 877 ("[A] party who is denied direct relief on a claim may nonetheless be found to be a prevailing party if it is clear that the party has otherwise achieved its main litigation objective.").

Defendant's sole rejoinder to this conclusion is to argue that the district court, faced with GIS's mixed litigation result, was obligated to find that no one party prevailed. But *Hsu*, the only authority on which Defendants rely in support of this argument, establishes no such rule. To be sure, *Hsu* commented on a past decision by the California Court of Appeals that had "recognized that the results of litigation may be so equivocal as to . . . require that no party be found to have prevailed for purposes of attorney fees under section

1717." 9 Cal. 4th at 874. But *Hsu* declined to endorse that principle and, instead, explicitly affirmed courts' discretion to choose—or not choose—the prevailing party except in instances in which one party obtains a "simple, unqualified win." *Id.* at 876.[4] Because *Hsu* obligates no fixed outcome in "mixed" situations, as here, Defendants' equivocality argument under *Hsu* fails. *Id.*[5]

---

[4] Although we generally construe well-reasoned dicta as binding, this rule applies only to panel opinions of our court and not, as here, decisions of a state court. *See United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001).

[5] Defendants further contend that the district court erred in its analysis of the prevailing party as between GIS and Guardian by neglecting to consider six claims that were pleaded in GIS's original complaint. These claims, which pertained to Guardian's alleged violation of franchising rules set forth in the Iowa Code, the North Carolina Unfair and Deceptive Trade Practices Act, and the Federal Trade Commission Franchise Rule, were dismissed by the district court for failure to state a claim, and GIS subsequently declined to replead them in its later complaints. As such, the claims should have been included in the district court's analysis of fees. However, although the district court erred by failing to consider the claims, its error was harmless because the claims pertain to franchising disputes that do not fall within the scope of the WDAs or their fee-shifting provisions. *See* Cal. Civ. Code § 1717(a) (fees are only available for "action[s] on [the] contract" containing fee provisions); *City of Emeryville v. Robinson*, 621 F.3d 1251, 1267 (9th Cir. 2010) ("An action is 'on the contract' when it is brought to enforce the provisions of the contract." (quoting *MBNA Am. Bank, N.A. v. Gorman,* 147 Cal. App. 4th Supp. 1, 7 (2006))). In any event, Defendants arguably waived any challenge arising from the court's purported error by failing to raise the disputed claims either in their preliminary motion for fees or their motion for reconsideration of the fee order. *Hillis v. Heineman*, 626 F.3d 1014, 1019 (9th Cir. 2010) (arguments raised for first time on appeal are waived).

### b.  GIS's Fee Award Was Properly Apportioned.

Defendants next contest the district court's specific award of fees, arguing that it failed to apportion fees to which GIS was not entitled.  As Defendants note, whereas most of GIS's claims arose from the WDAs—each containing fee-shifting provisions—certain other claims did not arise from the WDAs or corresponded to separate agreements that provided no entitlement to fees.  For example, two of GIS's claims corresponded to the alleged breach of an unrelated agreement, involving sales to Bob's Discount Furniture stores, that did not contain an attorney's fees provision.  Defendants contend that GIS's fee award was unwarranted insofar as it compensated GIS for the litigation of these other, unrelated claims.

As previously noted, we review this issue for abuse of discretion.  *PSM Holding Corp.*, 884 F.3d at 828.  Applying that standard, we conclude that the district court did not abuse its discretion in awarding GIS's fees.  "Attorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed."  *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129–30 (1979); *see also Akins v. Enter. Rent-A-Car Co.*, 79 Cal. App. 4th 1127, 1132–34 (2000).  Here, GIS expressly stated in its fee motion that it was "only requesting fees on hours devoted to or inextricably intertwined with the claims" arising from the WDAs.  GIS further affirmed that "[a]ll work that [it] performed" on non-WDA claims was "redacted from the invoices . . . and d[id] not factor into the hours and fees totals that GIS [sought] in connection with th[e] motion."  These statements were borne out in the billing records submitted by GIS, which contained labels reflecting that the time

entries generally corresponded to work for which it was appropriate to award fees.

The sole outliers in those records, to which Defendants refer us, are two time entries reflecting that counsel for GIS spent 12.8 hours "[d]raft[ing] [GIS's motion for judgment as a matter of law] re: Bob's and WDAs." Through that motion, GIS described numerous purported errors made by the district court during the 2021 trial and requested remand based on the "cumulative" effect of those errors. Because this common issue was "inextricably intertwined" with GIS's claims relating to the WDAs and the Bob's Discount Furniture agreement, GIS was not obligated to apportion its fees in connection with the motion. *See Diamond v. John Martin Co.*, 753 F.2d 1465, 1467 (1985). In any event, because GIS otherwise declared that its fees were properly apportioned, the district court carefully reviewed its time entries to confirm this statement, and a 12-hour time entry among 300 pages of billing records was the only reflection of potential error, the district court did not abuse its discretion in awarding GIS's requested fees. *See id.* ("[J]oinder should not dilute the right to attorneys' fees."); *Fed-Mart Corp. v. Pell Enters., Inc.*, 111 Cal. App. 3d 215, 228 (1980) ("An appellate court will interfere with [a trial court's] determination [of attorney's fees] only where there has been a manifest abuse of discretion.")

## IV. The District Court Erred in Analyzing RPM's Request for Fees.

Finally, after evaluating the parties' respective fee motions and litigation achievements, the district court also deemed GIS the prevailing party as against RPM, the independent entity that allegedly served as Guardian's alter ego. Defendants contend that this result, which resulted in

the denial of RPM's motion for $493,709.50 in fees, was incorrect because it turned on an improper analysis of a set of five claims that GIS abandoned prior to the 2017 trial. We agree.

GIS abandoned the claims in question by failing to proceed with them during the trial. The claims were all equitable in nature: Three were claims against RPM that turned on GIS's equitable alter ego theory, and two were claims against both RPM and Guardian that turned on equitable determinations under California law. However, by excluding all references to these issues in its proposed jury instructions and verdict form, GIS declined to submit these claims to the jury for an advisory ruling. Further, following trial, GIS neglected to submit the claims to the judge for a post-trial equitable ruling.

Although these omissions ensured that the disputed claims were not tried on the merits, GIS failed to provide affirmative notice to the court or to Defendants that it intended to abandon the claims. For example, GIS never sought leave to amend its complaint to remove the alter ego theory or the equitable claims. Similarly, in its pretrial statement before the court, GIS expressly stated that it did not "anticipate[]" that it would abandon any of its claims or theories in connection with trial.[6] Even after trial, when its abandonment of the claims was solidified, GIS continued to advocate for a favorable outcome with respect to the claims by asserting that they should be dismissed without prejudice.

---

[6] In response to GIS's pretrial statement, the district court issued a final pretrial order in which it confirmed that "GIS d[id] not anticipate abandoning any issues at th[at] time." GIS raised no objection to this order.

The district court rejected this argument and concluded that dismissal with prejudice was appropriate.

This determination set the stage for the question we now confront. The parties do not dispute that GIS voluntarily abandoned the equitable claims, and they agree that, pursuant to the district court's final judgment, the claims were ultimately dismissed with prejudice. But they dispute whether this disposition renders RPM the prevailing party or whether it renders the claims "voluntarily dismissed" within the meaning of § 1717(b)(2), such that there may be no prevailing party. *See* Cal. Civ. Code § 1717(b)(2) ("Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."). The dispute is arguably dispositive of RPM's request for fees: Because RPM was already deemed the prevailing party with respect to all non-abandoned claims, a determination that RPM was also the prevailing party with respect to the abandoned claims would give way to the conclusion that RPM achieved a "simple, unqualified victory" against GIS. *See Hsu*, 9 Cal. 4th at 877. This outcome would have obligated the district court to award RPM its fees. *Id.*[7]

---

[7] As noted, two of the abandoned claims were also brought against Guardian. However, the district court's treatment of the abandoned claims is ultimately immaterial to the question of the prevailing party as between GIS and Guardian. That is because, whereas GIS did not prevail on any of the claims it brought to trial against RPM, GIS prevailed on eight of the claims it brought to trial against Guardian. Therefore, in contrast from RPM, even if Guardian could be said to have prevailed with respect to the abandoned claims, Guardian would still not have achieved a "simple, unqualified victory" as against GIS. *See Hsu*, 9 Cal. 4th at 877. As a result, there is no doubt that the district court was vested

The district court avoided this outcome by concluding that the abandoned claims were voluntarily dismissed, and therefore had no prevailing party, for purposes of § 1717. It noted that GIS had not voluntarily dismissed the claims within the meaning of Fed. R. Civ. P. 41(a) because GIS did not file an affirmative request for dismissal and, in any event, the district court issued no order approving any such request. However, the district court nevertheless found that GIS clearly abandoned the claims by failing to prosecute them at trial. The district court found that this consideration was dispositive because a plaintiff's voluntary abandonment of a claim operates as a voluntary dismissal for purposes of § 1717(b)(2).

We agree that the voluntary abandonment of a claim can be "akin to a voluntary dismissal" and therefore operate as such for purposes of § 1717(b)(2). *In re Brosio*, 505 B.R. 903, 913 (B.A.P. 9th Cir. 2014). Nevertheless, we disagree that all voluntary abandonments are sufficient to operate as voluntary dismissals for purposes of that rule. Instead, we hold that, for purposes of § 1717, the voluntary abandonment of a claim may operate as a voluntary dismissal only where it is predicated upon a "clear, unequivocal and express intent to abandon" the claim. *D & J, Inc. v. Ferro Corp.*, 176 Cal. App. 3d 1191, 1195 (1986) (quoting *Kaufman & Broad Bldg. Co. v. City & Suburban Mortg. Co.*, 10 Cal. App. 3d 206, 213 (1970)). "Such intent must be demonstrated to the court by way of a motion to dismiss, stipulation of the parties or some other form of express intent on the record," including a party's pretrial

---

with discretion—which, for the reasons previously discussed, it exercised appropriately—in identifying GIS as the prevailing party as against Guardian. *See Scott Co.*, 20 Cal. 4th at 1109.

memorandum of contentions of fact and law, statement of abandonment, or formal request for dismissal. *See D & J*, 176 Cal. App. 3d at 1195 (quoting *Kaufman*, 10 Cal. App. 3d at 213).

In reaching this conclusion, we are guided by the California Court of Appeals' decision in *D & J*. *See Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 467 (1940) (federal courts "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently"). As it explained, "[i]t is not the stage of the proceedings which distinguishes a voluntary dismissal from an involuntary one. Rather, the key is the plaintiff's role, if any, in bringing it about." *D & J*, 176 Cal. App. 3d at 1194. For example, if the court grants a motion to dismiss that the plaintiff opposes, the resulting dismissal is involuntary. *Id.* By contrast, if the court grants an affirmative request for dismissal by the plaintiff, the resulting dismissal is voluntary for purposes of the federal rule of procedure, Fed. R. Civ. P. 41(a)(2), and the state analogue, Cal. Code Civ. Proc § 581(e). The same must be true for purposes of Cal. Civ. Code § 1717 when the plaintiff stops short of requesting affirmative dismissal but nevertheless proffers an "affirmative expression to the court of an intent to abandon the claim," resulting in immediate or eventual dismissal at a later point in the proceedings. *Donnelly v. Am. Express Bank, FSB*, No. 18-CV-1024-GPC, 2018 WL 4759206, at *4 (S.D. Cal. Oct. 2, 2018), *aff'd sub nom. In re Donnelly*, 773 F. App'x at 964.

That standard is not satisfied here because GIS did not "convey[] to the court an affirmative intention to abandon its claim[s] prior to trial." *Id.* As noted, GIS never made any statement that it would not be proceeding with the claims. Instead, GIS merely omitted the claims from its proposed

verdict form, proposed jury instructions, and post-trial motion for equitable rulings. These omissions, even if noticed, did not convey clear and unambiguous intent to abandon the claims. *See D & J*, 176 Cal. App. 3d at 1194–95. Rather, GIS's omissions were equally amenable to interpretation as just that—accidental omissions resulting from unintended error or oversight. Such a reading of GIS's filings would have been bolstered by GIS's affirmative pretrial statement that it did not anticipate abandoning any claims, and its subsequent failure to object to the court's pretrial order confirming that understanding. Thus, GIS's abandonment of the claims was far from unequivocal.

Further, because the abandoned claims were equitable ones on which the jury could offer no more than advisory rulings, GIS's abandonment of the claims was not truly discernible until after trial, when GIS failed to include the claims in its motion for post-trial equitable rulings. Stated differently, even if GIS's pretrial jury instruction and verdict form proposals could have been interpreted as showing clear intent to abandon the disputed claims, that abandonment was not unequivocal until after trial, when GIS left out the claims in its motion for post-trial equitable rulings. This uncertainty left Defendants with no choice but to bear the expense of preparing for trial with respect to claims that were never litigated. This prejudice was unnecessary and could have been averted by a clear statement of GIS's intent to abandon the claims in the first instance.

For the foregoing reasons, although voluntary abandonment of a claim can be "akin to a voluntary dismissal," *In re Brosio*, 505 B.R. at 313, GIS's voluntary abandonment of its claims here did not operate as a voluntary dismissal for purposes of § 1717 because GIS failed to provide the requisite notice of its intent to abandon the

claims before trial. Accordingly, we reverse as to the district court's treatment of the abandoned claims. We remand to the district court to reevaluate the prevailing party with respect to these claims and to determine what effect, if any, that analysis has on the overall prevailing party determination—and resulting entitlement to fees—as between GIS and RPM. *See Hsu*, 9 Cal. App. 4th at 877.

## CONCLUSION

We conclude that the district court employed a proper methodology and reviewed appropriate equitable considerations in evaluating the parties' motions for fees. We also conclude that the district court's award of fees to GIS was proper. Nevertheless, we find that the district court erred in analyzing RPM's entitlement to fees insofar as its analysis turned on of the set of claims that GIS abandoned by declining to litigate at trial. Because GIS failed to provide notice of its intent to abandon these claims, they were not voluntarily dismissed for purposes of § 1717, and the district court erred in holding that they had no prevailing party. Accordingly, we reverse as to the abandoned claims and remand to the district court to determine what corresponding fees, if any, are due to RPM.

**REVERSED in part, AFFIRMED in part, and REMANDED.**

Each side shall bear its own costs on appeal.